In re Eduardo Evelio AVILA, Debtor.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN
SERVICES, Plaintiff,

v.

Eduardo Evelio AVILA, Defendant.

Bankruptcy No. 84–20308x.
Adv. No. 84–2089A.

United States Bankruptcy Court,
W.D. New York.

Oct. 21, 1985.

John Macko, Rochester, N.Y., for defendant.

Jonathan Feldman, Asst. U.S. Atty., Rochester, N.Y., for plaintiff.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

The debtor filed his petition for relief under Chapter 7 of Title 11, United States Code, on March 22, 1984. As part of the debtor's filed schedules, Mr. Avila listed as a disputed claim $31,146.30 for a Public Health Service Scholarship. The disputed amount was as of the date December 5, 1980. The claimant is the Department of Health and Human Services. The Department of Health and Human Services commenced this adversary proceeding on August 30, 1984 to determine whether the alleged debt is dischargeable in bankruptcy.

The underlying facts leading up to this adversary proceeding are not in dispute. Both parties have entered into a stipulation as to those facts and they are outlined below. On May 22, 1974, Mr. Avila completed an "Application For Enrollment In the Public Health Service's Health Professions Scholarship Program". This application subsequently led to a "Notice of Scholarship Award" on May 6, 1975. The award was for the time period July 1, 1974 to June 30, 1975. A "Continuation Notice of Scholarship Award" was later issued for the year July 1, 1975 to June 30, 1976 and another for the period July 1, 1976 to June 30, 1977. The "awards" over the three year period totalled $22,007.35–$1,661.90 tuition and fee payments to the University of Puerto Rico School of Medicine and $20,250 in stipend payments to Mr. Avila.

Mr. Avila terminated his involvement with the Public Health Service Scholarship Program on June 5, 1978 and has not paid any amount to the Public Health Service nor has he served on active duty as a Commissioned Officer in the Public Health Service or as a Civilian Member of the National Health Service Corp. Both parties agree that the five year exception of section 523(a)(8)(A) of the Code and the undue hardship exception of section 523(a)–(8)(B) are inapplicable in the present proceeding.

The question presented is whether funds extended under the Public Health Service's Health Professions Scholarship Program are dischargeable in bankruptcy under 11 U.S.C. § 523(a)(8). The specific Code subsection reads as follows:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution, unless—

(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

The Public Health and National Health Service Corps Scholarship Training Program was created by statute, 42 U.S.C. § 234, (repealed by Act, Oct. 12, 1976, P.L. 94–484, Title IV, § 408(b)(1), 90 Stat. 2281, effective Oct. 1, 1977) to obtain physicians, dentists, nurses, and other health related specialists for the National Health Corps and other units of the Service. The statute listed four criteria for acceptance and continued participation in the program. The four criteria were:

(1) be accepted for enrollment, or be enrolled as a full-time student in an accredited (as determined by the Secretary) educational institution in the United States, or its territories or possessions;

(2) pursue an approved course of study, and maintain an acceptable level of academic standing, leading to a degree in medicine, dentistry, or other health-related specialty, as determined by the Secretary;

(3) be eligible for, or hold, an appointment as a commissioned officer in the

Regular or Reserve Corps of the Service or be selected for civilian service in the National Health Service Corps; and

(4) agree in writing to serve, as prescribed by subsection (e) of this section, in the Commissioned Corps of the Service or as a civilian member of the National Health Service Corps.

42 U.S.C. § 234(b).

The statute also provided for the situation when a person who had accepted the benefits of the program but did not fulfill his obligation to serve under criteria numbers three and four. That provision was:

If, for any reason, a person fails to complete an active duty service obligation under this section, he shall be liable for the payment of an amount equal to the cost of tuition and other education expenses, and scholarship payments, paid under this section, plus interest at the maximum legal prevailing rate. Any amount which the United States is entitled to recover under this paragraph shall, within the three-year period beginning on the date the United States becomes entitled to recover such amount, be paid to the United States.

42 U.S.C. § 234(f)(1).

In order to provide specialists in the health field for the Service, the program was authorized to provide funds for the training of these specialists. The funds provided would be an amount prescribed by the Secretary. 42 U.S.C. § 234(c). The bulletin, entitled "Public Health Service Scholarship Program-Information Bulletin For Medical and Osteopathic Students" and issued by the Department of Health, Education, and Welfare, explained what funds would be provided to those individuals who were accepted into the program. The program would pay full tuition, required fees, and a $750 monthly stipend. The stipend was paid to the accepted applicant for the traditional nine scholastic months of a year and was considered to be an all-inclusive amount to generally cover the student's living expenses while in school, as well as expenses for books, equipment, and other materials. Therefore, all funds distributed under the program were for educational or educationally related purposes.

Mr. Avila's application of May 22, 1974 was an application to be admitted into the Health Service's Professions Program, it was not an application for funds to pay for his education which would not require some form of repayment. Any argument by Mr. Avila that the funds distributed under the program was an unconditional grant of money is contrary to the great weight of evidence. The "Notice of Scholarship Award" dated May 6, 1975 specifically stated that either the awardee must fulfill the service obligation or repay the funds to the United States. The provisions of the award notice emphasized the fulfilling of the service obligation or the repayment to the United States in similar language to those subsections of 42 U.S.C. § 234 as cited above. The provisions also required the awardee sign the award notice signifying his intent to abide by the conditions of the award.

Subsection 523(a)(8) of the Bankruptcy Code generally denies the discharge of a debt for an educational loan. The subsection lists two exceptions to this language which are inapplicable in the present case because of the facts and the stipulation entered into by the parties. Qualifying language as to who made, insured, or guaranteed the loan is also part of this subsection, but it too does not negate the subsection's use under the facts of this case.

The legislative history of subsection 523(a)(8) indicates that Congress sought to quell the situation where an individual graduated from college owing one or more educational loans and then discharged them through a bankruptcy proceeding without making a good faith effort to repay those loans. See Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93rd Cong., 1st Sess., Pt. 1, 176–77. The facts of the case at bar appear to track the abuse which Congress tried to eliminate by enacting this subsection. Mr. Avila used funds provided by a governmental agency for the purpose of obtaining a higher education. These funds

were to be repaid through service or direct repayment. Mr. Avila neither fulfilled his service obligation nor did he make any repayment of the funds extended. The lack of any attempt at repayment under either repayment option by Mr. Avila, after acknowledging the necessity of repayment by the signing of the award notice and after accepting the benefits of the program, was an act of bad faith.

While the Congress made it clear what abuse they were trying to correct, they did not elaborate on exactly what constituted an educational loan. The facts of this case are clear that the funds provided were for educational or educationally related purposes. Therefore, what is encompassed by the term loan is determinative.

Several definitions of a loan, including their elements and their applications, have been developed over the years.

> The classic definition of a loan is given in *In re Grand Union Co.*, 2 Cir.1914, 219 F. 353, 356.
>
> A loan of money is a contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which he borrows.
>
> "In order to constitute a loan there must be a contract whereby, in substance one party transfers to the other a sum of money which that other agrees to repay absolutely, together with such additional sums as may be agreed upon for its use. *If such be the intent of the parties, the transaction will be considered a loan without regard to its form*" (Emphasis added.)
>
> This language is used as the definition of a loan in The Michie Co., 6 Banks and Banking, ch. 11, § 1 (1952). G. Munn, Encyclopedia of Banking and Finance (F. Garcia, 6th ed. 1962) defines a loan as "The letting out or renting of sums of money by a lender to a borrower, to be repaid with or without interest". *Id.* at 421.

Repeatedly, it has been observed that a loan may exist regardless of the form of a transaction. C. Sollman, Banks and Banking § 4823 (1936); *Williams Deacon and Co. v. Jones*, 1884, 77 Ala. 294, 305–06 (by implication). Loans have been found to exist in transactions that were arguably purchases, *see In re Grand Union, supra;* *Bon Homme County Bank v. Dakota National Bank*, 1926, 50 S.D. 191, 208 N.W. 825, 826, and in transactions that were arguably transfers in trust, *see Bellevue State Bank v. Coffin*, 1912, 22 Idaho 210, 125 P. 816, 818. Loans have been found, for the purpose of usury laws, when a bank advances money and the transaction is "in substance" a loan. *See Hudson v. Repton State Bank*, 1917, 16 Ala.App. 101, 75 So. 695, 696. Loans, in substance, have been found when the issue is relevant to whether a corporation's actions have been ultra vires, *see Watson v. Jackson*, Tex.Civ.App.1924, 264 S.W. 603, 610, error dismissed, 268 U.S. 681, 45 S.Ct. 637, 69 L.Ed. 1154; *Schramm v. Bank of California National Association*, 1933, 143 Or. 546, 20 P.2d 1093, 1096, and when the issue is relevant to the duty of fair dealing of one who receives money, *see Bank of the Republic v. Baxter*, 1858, 31 Vt. 101, 107. Overdrafts from demand deposit accounts have been thought to constitute loans. *See Schramm, supra;* G. Munn, *supra*, at 563; *cf. Bromberg v. Bank of American National Trust and Savings Association*, 1943, 58 Cal.App.2d 1, 135 P.2d 689, 692; *Prowinsky v. Second National Bank*, 1920, 49 U.S.App.D.C. 363, 265 F. 1003; *Florida-Patsand Corp. v. Central Bank and Trust Co.*, Fla.App. 1965, 177 So.2d 533, 534.

These cases support the proposition, with which we agree, that "whether or not [a] transaction constitutes a loan, is to be determined from the surrounding facts in the particular case". The Michie Co., 6 Banks and Banking, ch. 11, § 4, at 225; *Stolze v. Bank of Minnesota*, 1897, 67 Minn. 172, 69 N.W. 813, 814.

... That the presence or absence of interest is significant was noted by Judge Rubin in *National Bank of Commerce,*

[1970] 312 F.Supp. [71] at 75, and, of course, appeals to common sense. (Footnote omitted).

... While a note would certainly be evidence of a loan, it is not a prerequisite for the transaction to be a loan. *See, e.g., Merchants' National Bank v. First National Bank,* 8 Cir.1916, 238 F. 502, 507; *Zurich General Accident and Liability Insurance Co. v. Safe-T-Kros Drug Co.,* 1930, 91 Ind.App. 130, 170 N.E. 351, 353; *In re Nellis' Will,* Sur.Ct. 1926, 126 Misc. 638, 214 N.Y.S. 378, 379.

*Calcasieu-Marine Nat. Bank, Etc. v. Am. Emp. Ins.,* 533 F.2d 290, 296–98 (5th Cir.1976).

Whether or not a transaction constitutes a loan is essentially a factual question which is answered with reference to the context in which the transaction occurred. However, as a general matter, a critical issue in the determination of whether a transaction was a loan is whether the *intent* to make a loan was present.

*Midland Ins. Co. v. Friedgood,* 577 F.Supp. 1407, 1412–13 (S.D.N.Y.1984).

A "loan" is an advancement of money or other personal property under a contract or stipulation, express or implied, whereby the person to whom the advancement is made binds himself to repay it at some future time, together with such other sum as may be agreed upon for the use of the money or thing advanced. If such is the intent of the parties, a transaction will be deemed a loan regardless of its form. (Footnotes omitted).

45 Am.Jur.2d *Interest and Usury* § 117.

The facts of the case at bar conform to all of the applicable definitions of what constitutes a loan. Mr. Avila entered into a written agreement that he would absolutely repay the United States, either through his service or actual repayment of money plus interest, if the program extended funds to him directly or to the educational institution of his choice for educational purposes.

The program fulfilled its part of the agreement by providing those funds. Mr. Avila, on the other hand, made no attempt at performing his obligation. Whether the agreement was called a scholarship, award, grant or loan is immaterial. The intent of both parties was to create an obligation which would require repayment. This was a loan. This determination was also reached by other courts when viewing the Public Health Service Scholarship Program in light of section 523(a)(8) of the Code. *See U.S. v. Scotton,* Adversary Proceeding No. LA84–52157, (Bankr.C.D.Cal.1985); *U.S. v. Hogan,* 43 B.R. 117 (Bankr. D.Ariz.1984); *In re Luna,* 54 B.R. 637 (Bankr.S.D.Fla.1984); *cf. In re Hill,* 44 B.R. 645 (Bankr.D.Mass.1984) (extension of credit by University without a formal writing was considered an educational loan under 11 U.S.C. § 523(a)(8)).

The funds owing to the Department of Health and Human Services by Mr. Avila are an educational loan under 11 U.S.C. § 523(a)(8) and it is non-dischargeable.