TIMBERS, Circuit Judge.
 

 The United States Department of Health and Human Services (“appellant”) appeals from an order entered January 2, 1986 in the District of North Dakota, Paul Benson,
 
 Chief Judge,
 
 affirming a judgment of the Bankruptcy Court, William A. Hill,
 
 Bankruptcy Judge,
 
 entered June 26, 1985. The latter judgment dismissed appellant’s complaint in an adversary proceeding against Robert Porter Smith and Julie Rose Smith (“Robert”; “Julie”; or, collectively, “appel-lees”). Appellant’s complaint sought a determination that Robert’s financial obligation incurred under the Physician Shortage Area Scholarship Program (“PSASP”), 42 U.S.C. § 295g-21 (Supp. V 1975), was a debt “for an educational loan”,- 11 U.S.C. § 523(a)(8) (1982), and as such was not dis-chargeable in bankruptcy. Both the bankruptcy court and the district court held that Robert’s PSASP scholarship was not a “loan” and, therefore, was dischargeable. We hold that Robert’s obligation incurred under PSASP was a nondischargeable “educational loan” within the meaning of § 523(a)(8). We reverse.
 

 I.
 

 The facts are straightforward and not in dispute. Most were stipulated in the bankruptcy court. We summarize only those facts believed necessary to an understanding of the issue raised on appeal.
 

 Robert is a physician. He studied medicine at the University of Missouri from
 
 *123
 
 August 1974 through May 1977. During that period, appellant awarded him $13,-984.00 in PSASP scholarship grants to finance his medical training. Before its repeal by Pub.L. No. 94-484, Title IV, § 409(a), Oct. 12, 1976, 90 Stat. 2290, PSASP authorized appellant to “make scholarship grants to individuals who are medical students and who agree to engage in the practice of primary care after completion of their professional training ... in a physician shortage area_” 42 U.S.C. § 295g-21(a). PSASP grants were awarded on the condition that the recipient would engage in such practice “for a twelvemonth period for each full academic year with respect to which he receives such a scholarship grant.”
 
 Id.
 
 § 295g-21(c)(l). If a PSASP grant recipient failed to comply with this condition, the United States was entitled to recover from the recipient the amount of the grant plus “interest which would be payable ... if, at the time such grant was made, such grant were a loan bearing interest at a rate fixed by the Secretary of the Treasury....”
 
 Id.
 
 § 295g-21(c)(3). PSASP’s repeal does not affect the right of the United States to recover from recipients who fail to practice in a shortage area.
 

 Robert’s signed PSASP application stated that he agreed to practice in a physician shortage area on completion of his medical training; he also signed an agreement accepting the grant “and all applicable conditions.”
 

 On Robert’s graduation from medical school in May 1977, appellant deferred his obligation to practice in a physician shortage area for four years. During that period he pursued his residency in ophthalmology-
 

 He never has practiced in a physician shortage area. In a letter dated March 11, 1983, appellant informed Robert that he was in breach of his PSASP agreement and that he was obligated “to monetarily repay all funds awarded to you or on your behalf, plus 9 percent interest.” ' At that time, his PSASP obligation was $27,841.44. He never has made any payments on account of this debt.
 

 On February 21, 1984, appellees filed a petition under Chapter 7 of the Bankruptcy Code. 11 U.S.C. §§ 701-766 (1982 & Supp. Ill 1985). Appellees’ bankruptcy schedules listed Robert’s PSASP obligation, then amounting to $29,289.96, as an unsecured claim without priority.
 

 On January 3, 1985, appellant commenced the instant adversary proceeding in the Bankruptcy Court for the District of North Dakota to determine dischargeability. 11 U.S.C. Bankruptcy Rules 4007, 7001(6) (Supp. Ill 1985). Appellant sought an order determining that Robert’s PSASP obligation was a debt for an educational loan and hence was nondischargeable under 11 U.S.C. § 523(a)(8). Section 523(a)(8) makes nondischargeable “any debt ... for an educational loan made ... by a governmental unit”.
 

 A joint stipulation of counsel was filed with the bankruptcy court on May 17,1985. One of the provisions of the stipulation stated that appellant “makes no claim by this action against” Julie and that Julie “may be dismissed from this action.”
 

 In a memorandum opinion and order filed June 26, 1985, the bankruptcy court held that the PSASP grants awarded to Robert constituted a “contingent scholarship” and not a “loan” and hence that Robert’s PSASP obligation was dischargeable. A judgment dismissing appellant’s complaint was entered on this order on June 26, 1985. On July 5, 1985, appellant appealed from that judgment to the district court.
 

 In a memorandum opinion and order filed December 31, 1985, the district court affirmed the judgment of the bankruptcy court. This appeal followed. The sole issue on appeal is whether Robert’s PSASP obligation is a nondischargeable “debt ... for an educational loan” under 11 U.S.C. § 523(a)(8).
 

 II.
 

 The bankruptcy laws embody a congressional policy to free an honest debtor from
 
 *124
 
 his financial burdens and thus to allow him to make an unencumbered fresh start.
 
 Kokoszka v. Belford,
 
 417 U.S. 642, 645-46 (1974). Consistent with this fresh-start policy, the provisions of 11 U.S.C. § 727 (1982 & Supp. Ill 1985) require the bankruptcy court in most cases to discharge the debts of an honest consumer-bankrupt. S.Rep. No. 95-989, 95th Cong., 2d Sess. 7 (“At the heart of the fresh start provisions of the bankruptcy law is section 727 covering discharge.”),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5793. Congress has determined, however, that this fresh-start policy at times must yield to certain exceptions designed either to implement overriding policies or to curb abuses. One such exception, the one here at issue, provides in relevant part:
 

 “(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt— ...
 

 (8) for an educational loan made ... by a governmental unit, or made under any program funded ... by a governmental unit....”
 

 11 U.S.C. § 523(a)(8).
 

 The issue before us is whether Robert’s financial obligation incurred under PS ASP constitutes a “debt ... for an educational loan” within the meaning of § 523(a)(8). Appellees concede that Robert’s PSASP scholarship was for an educational purpose but dispute that it was a loan. We hold that it was a loan.
 

 A.
 

 The Bankruptcy Code does not define “educational loan”. “Where Congress uses terms that have accumulated settled meaning under ... common law, a court must infer, unless the statute otherwise dictates, the Congress means to incorporate the established meaning of these terms.”
 
 NLRB v. Amax Coal Co.,
 
 453 U.S. 322, 329 (1981). Courts have defined “loan” in a variety of contexts. In
 
 Commissioner of Internal Revenue v. Valley Morris Plan,
 
 305 F.2d 610, 618 (9th Cir. 1962), for example, the Ninth Circuit, in deciding whether a transaction constituted a loan for tax purposes, applied the definition of loan set forth in
 
 National Bank of Paulding v. Fidelity & Casualty Co.,
 
 131 F.Supp. 121 (S.D.Ohio 1954):
 

 “In order to have a loan, there must be an agreement, either express or implied, whereby one person advances money to the other and the other agrees to repay it upon such terms as to time and rate of interest, or without interest, as the parties may agree....”
 

 Paulding,
 
 131 F.Supp. at 123-24. Other courts have applied the
 
 Paulding
 
 definition to cases involving insurance contracts.
 
 Shoals National Bank of Florence v. Home Indemnity Co.,
 
 384 F.Supp. 49, 53 (N.D.Ala.1974),
 
 aff'd mem.,
 
 515 F.2d 1182 (5th Cir.1975);
 
 Sutro Bros. & Co. v. Indemnity Ins. Co.,
 
 264 F.Supp. 273, 289-90 (S.D.N.Y.),
 
 aff'd,
 
 386 F.2d 798 (2d Cir.1967).
 

 In
 
 In re Grand Union Co.,
 
 219 F. 353 (2d Cir.1914),
 
 cert. denied sub nom. Hamilton Investment Co. v. Irving Ernst,
 
 238 U.S. 626 (1915), the Second Circuit defined a loan as follows:
 

 “A loan of money is a contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which he borrows.
 

 ‘In order to constitute a loan there must be a contract whereby, in substance one party transfers to the other a sum of money which that other agrees to repay' absolutely, together with such additional sums 'as may be agreed upon for its use. If such be the intent of the parties, the transaction will be considered a loan without regard to its form.’ 39 Cyc. 926.”
 

 219 F. at 356.
 
 Accord,
 
 6 The Michie Co., Banks & Banking, Ch. 11, § 1, at 238 (Rev. ed. 1975);
 
 see also United Virginia Factors Corp. v. Aetna Casualty and Surety Co.,
 
 624 F.2d 814, 816 (4th Cir.1980) (quoting
 
 Grand
 
 Union);
 
 Calcasieu-Marine National Bank v. American Employers’ Insurance Co.,
 
 533 F.2d 290, 296-97 (5th Cir.) (using
 
 Grand Union’s
 
 “classic definition of a loan” to distinguish loan from sale in insurance context),
 
 cert. de
 
 
 *125
 

 nied sub nom. Louisiana Bank & Trust Co. v. Employers Liability Assurance Corp.,
 
 429 U.S. 922 (1976);
 
 IBM Poughkeepsie Employees Federal Credit Union v. Cumis Insurance Society,
 
 590 F.Supp. 769, 775 (S.D.N.Y.1984) (Weinfeld, J.) (quoting
 
 Grand Union).
 

 Under the well settled definitions of loan set forth above, Robert’s scholarship was a loan. Appellant advanced money to Robert. By signing an agreement accepting the grant “and all applicable conditions”, Robert agreed to repay appellant with interest if Robert failed to practice in a physician shortage area for the requisite period.
 

 Appellees argue that Robert’s PSASP scholarship was not a “loan” since his obligation to reimburse the United States was not “absolute[ ]”,
 
 Grand Union, supra,
 
 219 F. at 356, but rather was contingent on his failure to practice in a physician shortage area. Courts have differed on whether the contingency of the obligation to repay defeats the status of the transaction as a loan.
 
 Compare Northern Mining Corp. v. Trunz,
 
 124 F.2d 14, 17 (9th Cir.1941) (in deciding real property dispute, the court quoted “Volume 38 C.J., page 127” for the proposition that “ ‘[i]f the obligation to return is based on a contingency or on a certain condition which may or may not happen or occur, the transaction is not a loan.’ ”),
 
 cert. denied,
 
 316 U.S. 664 (1942)
 
 with United Gas Improvement Co. v. Commissioner of Internal
 
 Revenue, 240 F.2d 312, 318 (3d Cir.1956) (in determining tax consequences of a transaction, the court stated: “ ‘A loan is no less a loan because its repayment is made contingent’ ”.) (quoting
 
 Island Petroleum Co. v. Commissioner of Internal Revenue,
 
 57 F.2d 992, 994 (4th Cir.),
 
 cert. denied,
 
 287 U.S. 646 (1932))
 
 and Old Colony Trust Assoc. v. Hassett,
 
 150 F.2d 179, 183 (1st Cir.1945) (same; quoting
 
 Island Petroleum) and American Bemberg Corp. v. United States,
 
 150 F.Supp. 355, 360 (D.Del.1957) (same; quoting
 
 United Gas, supra,
 
 240 F.2d at 318),
 
 aff'd,
 
 253 F.2d 691 (3d Cir.),
 
 cert. denied,
 
 358 U.S. 827 (1958).
 
 Cf. Saunders v. Commissioner of Internal Revenue,
 
 720 F.2d 871, 873 (5th Cir.1983) (recognizing “that the contingency of repayment standing alone does not invalidate a loan for tax purposes.”).
 

 We follow the weight of authority that “[a] loan is no less a loan because its repayment is made contingent.”
 

 Appellees contend further that Robert’s scholarship was not a loan in view of the use of the subjunctive verb form in PSASP. The United States, on the failure of a PSASP grant recipient to practice in a physician shortage area, is entitled to recover the amount of the grant plus “sums of interest which
 
 would
 
 be payable on each such scholarship grant
 
 if,
 
 at the time such grant was made, such grant
 
 were
 
 a loan bearing interest_” 42 U.S.C. § 295g-21(c)(3) (emphasis added). Appellees argue that a PSASP grant cannot constitute a loan since, through its use of the italicized words, the statute suggests that the scholarship grant
 
 in fact
 
 was not a loan. Whatever may be the surface appeal of appel-lees’ argument, our examination of the legislative history of both § 523(a)(8) of the Bankruptcy Code and PSASP compels the conclusion that there is no merit to this claim.
 

 We have carefully considered appellees’ other arguments and we conclude that they likewise are without merit.
 

 B.
 

 In a House Report leading to the enactment of the Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, 92 Stat. 2549, Congress recognized the unique nature of educational loans:
 

 “[Ejducational loans are different from most loans. They-are made without business considerations, without security, without cosigners, and relying for repayment solely on the debtor’s future increased income resulting from the education. In this sense, the loan is viewed as a mortgage on the debtor’s future. In addition, there have been abuses of the system by those seeking freedom from educational debts without ever attempting to repay.”
 

 
 *126
 
 H.R.Rep. No. 595, 95th Cong., 2d Sess. 133,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad. News 5963, 6094. The unique nature of such loans was recognized in
 
 In re Ship-man,
 
 33 B.R. 80 (Bankr.W.D.Mo.1983). There the bankruptcy court, as part of its rationale in concluding that the loan in question was not “educational”, explained the background and purpose of § 523(a)(8) of the Bankruptcy Code:
 

 “Under the Bankruptcy Act, educational loans were dischargeable resulting in millions of dollars in federally guaranteed loans defaulted upon annually. To correct this situation, section 439A(a) of the Higher Educational Act of 1965 was amended to provide that these loans were nondischargeable in a bankruptcy proceeding. When the Bankruptcy Act was reformed in 1978, this exception to discharge for educational loans was removed from the Higher Educational Act and placed in section 523 of the Bankruptcy Code. See, 4 Collier on Bankruptcy, 523.18. at 523-136-138 (15th Ed. 1983).
 
 This direct link to the federal education statute is an excellent indication that the central issue in determining dischargeability is whether the funds were for educational purposes, not whether, the funds constituted a loan.”
 

 33 B.R. at 82 (emphasis added).
 

 In
 
 In re Avila,
 
 53 B.R. 933 (Bankr.W.D. N.Y.1985), the court stated:
 

 “The legislative history of subsection 523(a)(8) indicates that Congress sought to quell the situation where an individual graduated from college owing one or more educational loans and then discharged them through a bankruptcy proceeding without making a good faith effort to repay those loans. See Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93-137, 93rd Cong., 1st Sess., Pt. 1, 176-77.”
 

 53 B.R. at 935. The
 
 Avila
 
 court applied the
 
 Shipman
 
 court’s formulation of the “central issue” under § 523(a)(8) to determine that a scholarship awarded pursuant to the Public Health and National Health Service Corps Scholarship Training Program, 42 U.S.C. § 234 (Supp. V 1975), a federal program similar to PSASP, constituted a nondischargeable “educational loan”.
 

 As in
 
 Avila,
 
 the facts of the instant case “appear to track the abuse which Congress tried to eliminate by enacting [§ 523(a)(8) ].” 53 B.R. at 935. A PSASP grant recipient accepts public funds to finance his education. Following graduation, the recipient defaults both on his obligation to practice in a physician shortage area and on his resulting obligation to reimburse the United States. To allow him then to go into bankruptcy, avoid his debt, and subsequently to engage in a lucrative medical practice, would make a farce of the clear congressional purpose which underlies § 523(a)(8).
 

 The legislative history of PSASP supports this conclusion. The cosponsor of the Senate Bill leading to PSASP made the following statement:
 

 “If a scholarship recipient fails to hon- or his commitment, the scholarship is in effect converted to a loan, and the individual is required to repay to the Government the value of the scholarship plus interest at the commercial market rate. If the program works, we will have taken important action in helping to solve the maldistribution problem; if it does not, the Government will not lose a cent.”
 

 117 Cong.Rec. 25139 (July 14, 1971) (statement of Sen. Beall).
 

 In construing the statutes which control the issue before us, we must be mindful of our duty “ ‘to find that interpretation which can most fairly be said to be imbedded in the statute[s], in the sense of being most harmonious with [their] scheme and wbh the general purposes that Congress manifested.’ ”
 
 Commissioner of Internal Revenue v. Engle,
 
 464 U.S. 206, 217 (1984) (quoting
 
 NLRB v. Lion Oil Co.,
 
 352 U.S. 282, 297 (1957) (Frankfurter, J., concurring in part, dissenting in part)). Although we recognize that the language of PSASP, standing alone, arguably may give rise to certain ambiguities as to the status of a
 
 *127
 
 PSASP scholarship as a loan, the circumstances which led to the enactment of both statutes compels the conclusion that Con-' gress intended § 523(a)(8) of the Bankruptcy Code to except from dischargeability debts incurred under scholarship programs such as PSASP.
 

 . We hold, therefore, that Robert’s PSASP obligation is a “debt ... for an educational loan” and hence is not dischargeable.
 

 Ill
 

 To summarize:
 

 The Bankruptcy Code does not define “educational loan”. Under well established definitions, however, Robert’s PSASP scholarship constituted a “loan”, since he agreed to reimburse the United States if he failed to practice in a physician shortage area. Although a strained construction of the language of PSASP arguably may be said to give rise to certain ambiguities as to whether a PSASP scholarship is a loan, we are satisfied that the legislative history shows beyond doubt that Congress intended § 523(a)(8) of the Bankruptcy Code to make nondischargeable those debts incurred under programs such as PSASP. We therefore reverse the order of the district court which affirmed the judgment of the bankruptcy court.
 

 Reversed.