In re Jack Morgan **LIPPS**, Debtor.

**RURAL KENTUCKY MEDICAL SCHOLARSHIP FUND, INC., Plaintiff,**

v.

**Jack Morgan LIPPS, Defendant.**

**Bankruptcy No. 86–4163 BK–T–7. Adv. No. 86–609.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 25, 1987.

Joseph G. Heyck, Tampa, Fla., for plaintiff.

Lawrence Kleinfeld, St. Petersburg, Fla., for defendant.

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

ALEXANDER L. PASKAY, Chief Judge.

This is a Chapter 7 liquidation case, and the matters under consideration are cross Motions for Summary Judgment filed by Rural Kentucky Medical Scholarship Fund, Inc., (Scholarship Fund), and by Jack Morgan Lipps (Debtor), the parties involved in the above captioned adversary proceeding. The Plaintiff's Complaint seeks a determination by this Court that a debt allegedly owed to the Scholarship Fund by the Debt-

or is based on educational loans obtained by the Debtor; and, therefore, by virtue of § 523(a)(8) of the Bankruptcy Code the debt should be excepted from the overall protective provisions accorded by the general bankruptcy discharge.

The Court, having considered the Motions and having heard arguments of counsel, finds that the undisputed facts relevant to a resolution of the matter under consideration as appear from the record are as follows:

The Debtor, while attending medical school, obtained four loans between 1976 and 1979. The purpose of the loans was to provide the Debtor with money "to be applied to tuition and expenses while the Borrower is enrolled as a student in an accredited medical school." (Plaintiff's Exhibits A–D) Each loan transaction was accompanied by three documents: a loan agreement (Plaintiff's Exhibits A–C, pp. 1–4, Plaintiff's Exhibits D, pp. 1–2), a promissory note (Plaintiff's Exhibits A–D), and a document entitled an acknowledgment of disclosure. (Plaintiff's Exhibits A–D) All three documents for each loan transaction were signed by the Debtor.

The first loan agreement, dated August 6, 1976, provided the Debtor with principal in the amount of $3,636.50 at an annual interest rate of 8.5%. (Plaintiff's Exhibit A, par. 1) The loan agreement further provided as follows:

> Borrower agrees in consideration of the receipt of any such loan that within 60 days after his graduation from medical school ... he will enter the medical practice in Kentucky in an approved rural area ... or in a critical rural area ... or with the Kentucky Department of Human Resources or a local health department ... and will continue practice in such area for a period of at least one year for each academic year in which a loan has been received from the Board. (Plaintiff's Exhibit A, par. 2)

Accompanying the above stated medical practice obligations were the following conditions:

1. In the event the Borrower practiced medicine in an approved rural area in Kentucky, he would receive a reduction in interest rate on the loan from 8.5% to 2% for each completed year of such practice. (Plaintiff's Exhibit A, par. 6.a)

2. If the Borrower practiced medicine in a critical rural area of Kentucky, he would receive for a completed year of such practice a "cancellation of the principal and accumulated interest" on the loan (Plaintiff's Exhibit A, par. 6.b)

3. If the Borrower practiced medicine as a health officer with the Kentucky Department of Human Resources or a local health department, he would receive for a completed year of such practice "a cancellation of the principal and accumulated interest" on the loan (Plaintiff's Exhibit A, par. 6.c)

Finally, the loan agreement provided that if the Borrower failed to fulfill one of the medical practice obligations set forth above, the Borrower would be charged $5,000.00 as liquidated damages to compensate for "damages suffered ... by the Foundation ... and ... by the residents of the designated rural areas in Kentucky who [were designed to be] the beneficiaries of the loan agreement ..." (Plaintiff's Exhibit A, par. 8)

On June 23, 1977, the Debtor and the Scholarship Fund entered into an identical loan agreement. (Plaintiff's Exhibit B) A third loan agreement was entered into on July 14, 1978. The terms and conditions of this loan were identical to those of the two previous loans except the principal amount borrowed was $4,156.00. (Plaintiff's Exhibit C)

The final loan agreement, dated August 1, 1979, provided the Debtor with principal in the amount of $4,156.00 (Plaintiff's Exhibit D). Again, this loan carried an interest rate of 8.5%. However, this loan agreement provided that if the Debtor practiced medicine in a rural area of Kentucky the interest rate would be reduced from 8.5% to 5.75%. All other terms and conditions of this loan were identical to those recited in the prior three loan agreements. The total principal amount borrowed on all four loans was $15,585.00.

It is uncontested that upon the Debtor's completion of medical school, he did not practice in one of the specified service areas in Kentucky nor did he serve as a health officer. It is further undisputed that in December of 1984, the Debtor wrote a check to the Scholarship Fund in the amount of $17,886.18 in an attempt to repay the loans in full. The amount of this payment was determined by the Debtor according to a document on the letterhead of the Scholarship Fund which stated that the amount necessary to repay the loans in full was indeed $17,886.18. The Scholarship Fund calculated this amount by applying to the total principal amount borrowed, $15,585.00, the reduced interest rates of 2% and 5.75% respectively that would be applied if the Debtor had practiced medicine in one of the designated areas and not the original rate fixed that was applicable in the event the Debtor did not serve in the designated areas. It is further undisputed that on June 6, 1985, the Debtor signed a promissory note in favor of the Scholarship Fund in the amount of $27,877.06. This amount included the $20,000.00 owed in liquidated damages, i.e. $5000.00 for each loan, and $6,658.32 owed in interest on the four loans. It is admitted that at the time of the filing of the Petition in this case, the Debtor owed $25,647.58 on the promissory note.

The Scholarship Fund and the Debtor agree that based on the record there are no genuine issues of material fact and that the issues presented may be decided as a matter of law. In arguing in support of its Motion for Summary Judgment, the Scholarship Fund contends that the medical practice service obligations, the accompanying interest rates, and the liquidated damages provisions are part and parcel of each loan agreement; that they are not severable from the principal amounts borrowed; thus, the debt owed by the Debtor for interest and liquidated damages is nondischargeable by virtue of § 523(a)(8) of the Bankruptcy Code.

The Debtor counters these claims by arguing that Summary Judgment declaring the debt dischargeable should be entered in his favor as the amounts owed do not reflect a debt owed on an educational loan as defined by 11 U.S.C. § 523(a)(8). In the alternative, the Debtor argues that nondischargeability would impose an undue hardship on the Debtor and on his dependents.

In support of their respective contentions, the parties rely on 11 U.S.C. § 523(a)(8) which provides in pertinent part:

§ 523. Exceptions to discharge

(a) a discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this Title does not discharge an individual debtor from any debt

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, unless

(A) such loan first became due before five years before the date of the filing of the petition or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

It should be noted at the outset that there is no dispute that the Scholarship Fund is funded in part by a governmental unit. It is further without dispute that the debt owed on the loans first became due less than five years before the filing of the Debtor's Petition. It is also important to note that the Debtor has presented no evidence that repayment of the debt owed would impose an undue hardship on the Debtor and his dependents. Although nondischargeability may create an inconvenience for the Debtor, the record does not show evidence of illness, incapacity or otherwise which would impose the level of hardship necessary to except an educational loan from nondischargeability under 11 U.S.C. § 523(a)(8)(B). *See, for example, Binder v. U.S. Dept. of Education*, 54 B.R. 736 (Bankr.D.N.D.1985). The primary issue to be addressed, therefore, is whether the debt owed by the Debtor to the Scholarship Fund is "for an educational loan." 11 U.S.C. § 523(a)(8)

It is well established that nondischargeable educational loans clearly include the type of loans under consideration, that is, where funds are loaned to students to pay for educational expenses in exchange for an agreement to fulfill a particular service obligation or, in the alternative, repayment plus interest. See *U.S. Dept. of H.H.S. v. Smith*, 807 F.2d 122 (8th Cir.1986), *U.S. Dept. of H.H.S. v. Brown*, 59 B.R. 40 (Bankr.W.D.La.1986), *U.S. Dept. of H.H.S. v. Vretis*, 56 B.R. 156 (Bankr.W.D.Fla. 1985), *U.S.Dept. of H.H.S. v. Avila*, 53 B.R. 933 (Bankr.W.D.N.Y.1985). It is clear from the loan agreement that the Debtor made a similar agreement with the Scholarship Fund and agreed to repay the Scholarship Fund for its loans through one of three methods: actual repayment of principal plus interest at 8.5%, repayment of principal plus interest at the reduced rate of 2% or 5.75% if the Debtor did render medical services in rural Kentucky, or complete repayment through professional services. Based on the terms of the loan agreements, the type of loans in question undoubtedly fall within the ambit of "educational loans" contemplated by 11 U.S.C. § 523(a)(8).

■ Regarding the amounts owed by the Debtor in interest accrued on the educational loans, although the Debtor repaid the principal amounts and interest at the reduced rate, it is clear from the loan agreements that a reduction in interest would occur only in conjunction with fulfillment of a medical practice service obligation. As is stated in Paragraph 6(a) of the first three loan agreements, "If the Borrower elects to practice in an approved rural area in Kentucky ... he shall receive for one completed year of such practice a reduction in interest on a loan received for one academic year, from 8.5% to 2% per annum ..." The same paragraph appears in the fourth loan agreement, although the reduction in interest rate is from 8.5% to 5.75%. The Debtor does not dispute that he did not fulfill one of the service obligations. The higher interest rate of 8.5%, therefore, was applicable to the amounts borrowed, and was clearly part of the loan repayment terms. Thus, the amounts owed in interest should be nondischargeable debts under § 523(a)(8).

■ Concerning the liquidated damages provisions of the loan agreements, however, it is clear from the loan agreements that the $5,000.00 penalties assessed would be imposed only if the Debtor failed to perform one of the medical practice service obligations. As it is stated in each loan agreement:

"It is understood and agreed that if for any reason the Borrower fails to fulfill the medical practice provisions ... of this agreement ... [liquidated damages in the amount of $5,000.00 would be] "due and payable within 90 days of the time that the Borrower should have commenced his rural medical practice ..." (Plaintiff's Exhibit A–D, loan agreement, par. 8)

Clearly, the imposition of these liquidated damages were not to repay the loans. These damages were clearly imposed to penalize the Debtor and compensate the Scholarship Fund for the Debtor's noncompliance with contract terms. From this conclusion it follows that the amounts owed in liquidated damages are not debts "for an educational loan," but are contractual penalties as their purpose is not to repay the extension of money, but is to penalize the Debtor. Clearly, contractual penalties are not included among the exceptions to discharge set forth in 11 U.S.C. § 523. For this reason, this Court is satisfied that the amounts owed for liquidated damages should be dischargeable debts.

Based on the foregoing, this Court is satisfied that the amounts representing interest owed by the Debtor to the Scholarship Fund are nondischargeable debts pursuant to 11 U.S.C. § 523(a)(8). Therefore, the Scholarship Fund's Motion for Summary Judgment should be granted as to these amounts. This Court is further satisfied that the amounts owed by the Debtor to the Scholarship Fund in liquidated damages are dischargeable debts. The Debtor's Motion for Summary Judgment, therefore, should be granted as to these amounts.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Scholarship Fund's Motion for Summary Judgment be, and the same is hereby, granted in part and denied in part, and amounts owed in interest are deemed nondischargeable debts.

It is further

ORDERED, ADJUDGED AND DE-CREED that the Debtor's Motion for Summary Judgment be, and the same is hereby, granted in part and denied in part, and amounts owed in liquidated damages are deemed dischargeable debts.

It is further

ORDERED, ADJUDGED AND DE-CREED that the Parties be, and they are hereby, ordered to submit a written Stipulation within twenty (20) days of the date of this Order as to the amounts owed in interest and amounts owed in liquidated damages as these amounts are not specified in the record.

It is further

ORDERED, ADJUDGED AND DE-CREED that in the event the parties fail to file a Stipulation with this Court, a further hearing will be scheduled on this matter upon Motion of a party in interest.

A separate Final Judgment will be entered in accordance with the foregoing.