In re Leeanna JOHNSON, a/k/a, Leeanna Lynch, Debtor.

MISSOURI BAPTIST COLLEGE, Plaintiff,

v.

Leeanna JOHNSON, a/k/a Leeanna Lynch, Defendant.

Bankruptcy No. 96–49215–399.
Adversary No. 97–4131–399.

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

Dec. 3, 1997.

John V. LaBarge, Jr., St. Louis, MO, Trustee.

Richard J. Dippel, St. Louis, MO, for Plaintiff.

Charles Huber, St. Ann, MO, for Defendant.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

This case addresses whether an extension of credit for educational purposes by Missouri Baptist College qualifies as a non-dischargeable student loan under § 523(a)(8) of the Bankruptcy Code.[1] The college extend-

1. The Bankruptcy Code is 11 U.S.C. §§ 101–1330. All future references are to Title 11 unless otherwise indicated.

ed credit to the debtor for tuition, books and other expenses but did not actually advance a sum of money to the debtor. For the reasons set forth in this opinion the obligation of the debtor to Missouri Baptist College is held non-dischargeable.

## JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 9.01 of the United States District Court for the Eastern District of Missouri. The parties have stipulated that this is a "core proceeding" in which the Court may hear and enter appropriate judgments pursuant to § 157(b)(2)(I).

## FACTS

The parties filed a stipulation of facts in this proceeding. The debtor, Leeanna Johnson ("Debtor"), is indebted to the plaintiff, Missouri Baptist College ("Plaintiff") for credit extended by Plaintiff to Debtor for educational services. Debtor executed a promissory note to Plaintiff in the original principal amount of $5,892.49, memorializing this indebtedness. The promissory note was dated August 28, 1989 and the full balance became due on December 15, 1989. This date was less than seven years before the filing of Debtor's Chapter 13 petition.[2]

Plaintiff filed its Complaint to have the Debtor's indebtedness declared non-dischargeable under § 523(a)(8). At the time of filing Plaintiff's Complaint, Debtor was in default under the promissory note in the principal amount of $4,915.96, plus attorney's fees in the amount of $737.40 and interest in the amount of $1,524.00. The promissory note provided for recovery of these items by Plaintiff. The parties agree that Plaintiff is a not-for-profit corporation, and Defendant concedes that she makes no claim of hardship concerning this debt.

Although Plaintiff extended credit to Debtor pursuant to the terms of the note, Plaintiff did not actually transfer funds to Debtor. Because no funds exchanged hands, Debtor asserts that the extension of credit by Plaintiff, while otherwise meeting all of the requirements of § 523(a)(8), did not constitute a "loan" within the scope of § 523(a)(8). Therefore, Debtor contends that the debt should be dischargeable.

Procedurally, the parties acknowledge that the only matter in dispute is the legal question of whether this extension of credit constitutes a "loan" under § 523(a)(8). Thus, the parties submitted the case on stipulated facts and briefs. Although neither party filed a written motion for summary judgment, this court shall treat the cause as if submitted on cross motions for summary judgment.

## DISCUSSION

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure made applicable to adversary proceedings in bankruptcy under Rule 7056 of the Federal Rules of Bankruptcy Procedure. Rule 56(c) Fed.R.Civ.P. states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, (1986); Fed. R. Bankr.P. 7056(c).

Debtor is entitled to judgment on this adversary complaint if Plaintiff's extension of credit is not a "loan" within the scope of § 523(a)(8) of the Bankruptcy Code. If the transaction is a "loan" however, judgment should be entered for Plaintiff.

Section 523(a)(8) provides that a discharge under Title 11 does not discharge any debt that is:

> (8) for an educational benefit overpayment or *loan* made, insured or guaranteed

---

**2.** Interestingly, the Debtor filed her Chapter 13 petition on November 1, 1996. The promissory note became due on December 15, 1989, and there is no evidence that the repayment period was suspended.

by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend;

11 U.S.C. § 523(a)(8) (emphasis added).

While this section identifies three categories of obligations that are excepted from discharge, namely: 1) educational benefit overpayments; 2) loans; and 3) obligations to repay funds advanced, *New Mexico Instit. of Mining and Tech. v. Coole (In re Coole )*, 202 B.R. 518, 519 (Bankr.D.N.M.1996), only the second category is at issue in this proceeding.

Debtor's position in this case has considerable support among bankruptcy courts addressing this issue. *See Coole,* 202 B.R. at 519 (the plain meaning of "loan" is that a sum must be advanced); *Peller v. Syracuse Univ. (In re Peller )*, 184 B.R. 663 (Bankr. D.N.J.1994) (neither the university nor any governmental unit provided funds to the debtor, therefore no loan existed); *Alibatya v. New York Univ. (In re Alibatya )*, 178 B.R. 335 (Bankr.E.D.N.Y.1995) (plaintiff's student housing default cannot be a nondischargeable debt under § 523(a)(8) as no funds were ever received by plaintiff); *United Resource System, Inc. v. Meinhart (In re Meinhart )* 211 B.R. 750 (Bankr.D.Colo.1997) (facts were unclear whether debtor actually received funds even though debtor signed promissory note); *DePasquale v. Boston Univ. School of Dentistry (In re DePasquale )*, 211 B.R. 439 (Bankr.D.Mass.1997) (a loan involves more than an extension of credit; it requires the furnishing of money by a lender to a borrower); *Dakota Wesleyan Univ. v. Nelson (In re Nelson )* 188 B.R. 32 (D.S.D.1995) (even if debtor received educational benefit from the university, the university did not provide the debtor any funds to form a loan).

The cases supporting Debtor's position focus on the meaning of the word "loan" in § 523(a)(8), and adopt a strict interpretation of the word, requiring that a sum of money be advanced to the borrower. *Coole,* 202 B.R. at 519. While the Bankruptcy Code contains no definition of the word "loan,"

courts, including the Eighth Circuit (*see United States Dept. of Health and Human Serv. v. Smith,* 807 F.2d 122 (8th Cir.1986)) have frequently adopted the classic definition of loan stated by the second circuit court of appeals in *In re Grand Union Co.,* 219 F. 353 (2d Cir.1914). There, the court defined a "loan" as follows:

> A loan of money is a contract by which *one delivers a sum of money to another* and the latter agrees to return at a future time a sum equivalent to that which he borrows.
>
> In order to constitute a loan there must be a contract whereby, in substance, one party *transfers to the other a sum of money* which that other agrees to repay absolutely, together with such additional sums as may be agreed upon for its use. If such be the intent of the parties, the transaction will be considered a loan without regard to its form.

*Id.* at 356, (emphasis added) *quoted in United States Dept. of Health and Human Serv. v. Smith,* 807 F.2d at 124 (holding that the debtor/physician's financial obligations under the Physician Shortage Area Scholarship Program were non-dischargeable student loans based upon the definition above, even though repayment was contingent on the debtor's failure to practice in a physician shortage area).

While Debtor's approach to student loan dischargeability cases appears to be gaining popularity as evidenced by the prevalence of recent decisions, this court believes such approach is too narrow and improperly focuses on the form of the transaction, by asking whether cash changed hands, rather than by focusing properly on the substance of the transaction. The correct analysis, in the opinion of this court, asks whether the creditor extended credit to the Debtor (for educational purposes) and whether the Debtor promised to repay the amount of credit advanced. Whether a creditor actually disbursed cash to the debtor is irrelevant to the substance of the transaction.

This less stringent understanding of the term "loan" for § 523(a)(8) purposes is consistent with cases cited by Plaintiff and with

the only circuit court decision directly addressing this issue. *In re Merchant,* 958 F.2d 738 (6th Cir.1992). *See University of New Hampshire v. Hill (In re Hill )*, 44 B.R. 645 (Bankr.D.Mass.1984) (holding that university's extension of credit to debtor for cost of tuition until debtor received proceeds of state guaranteed student loan was a student loan under § 523(a)(8)); *Carson v. Logan College of Chiropractic (In re Carson )*, 150 B.R. 228 (Bankr.E.D.Mo.1993) (declaring that promissory notes executed in lieu of full payment of tuition at enrollment were educational loans under § 523(a)(8)); *Najafi v. Cabrini College (In re Najafi )*, 154 B.R. 185 (Bankr.E.D.Pa.1993) (recognizing difficulty in characterizing student's debt on tuition account as a "loan" or "obligation to repay funds," but concluding that tuition account was a non-dischargeable student loan under § 523(a)(8)); *Stone v. Vanderbilt Univ. (In re Stone )*, 180 B.R. 499 (Bankr.M.D.Tenn. 1995) (finding school's refusal to release student's transcript did not violate automatic stay where student's account was delinquent because account qualified as a non-dischargeable student loan).

This court's approach is also consistent with the policy, practice and legislative history of § 523(a)(8), and with cases that have broadly interpreted other definitional terms within § 523(a)(8) despite the well established principal that exceptions to discharge are to be narrowly construed. *Barclays Am. Business Credit v. Long (In re Long )*, 774 F.2d 875, 879 (8th Cir.1985). *See, e.g. In re Pelkowski*, 990 F.2d 737 (3rd Cir.1993) (holding that obligations incurred by debtor as co-maker on note for her children were non-dischargeable student loans even though debtor herself did not receive any of the funds advanced); *TI Fed. Credit Union v. Delbonis (In re Delbonis )* 183 B.R. 1 (D.Mass.1995) (holding that federal credit union was a nonprofit institution for purposes of dischargeability of educational loans even though federal credit union paid profits as dividends to its members).

**Circuit Court and Parallel Authority**

The leading federal appellate authority addressing this issue is *In re Merchant,* 958 F.2d 738 (6th Cir.1992). In *Merchant,* the debtor received a loan for educational expenses from a commercial bank. Under a student loan program with the university, the bank had full recourse against the university in the event the student defaulted on the obligation. The student later defaulted on the promissory note, and the university paid the bank and acquired the note by assignment. In addition to the bank loan, the student also executed a promissory note directly to the university for credit extended by the university for other educational expenses. Ultimately, the student filed a Chapter 7 petition and sought determination that her obligations to the university were dischargeable. The bankruptcy court and district court ruled that the obligations were dischargeable and the university appealed.

The sixth circuit reversed, and although it adopted the definition of "loan" from *In re Grand,* it declined to follow the lower courts' strict interpretation of that definition. The bankruptcy and district courts determined that the obligations were not "loans" under § 523(a)(8) because the university did not advance a sum of money under its promissory note nor "fund in whole or in part" the bank loan. After reviewing the legislative history surrounding adoption of the student loan exception to discharge, the circuit court concluded that a "narrow construction of the discharge provision [employed by the lower courts] failed to give proper weight to the design and policy underlying the overall statutory scheme of the educational loan exception to discharge." *Merchant* 958 F.2d at 740. Thus, to give proper effect to the policy behind student loan nondischargeability, the court employed a more expansive interpretation of "loan."

Adopting the analysis of *In re Hill,* 44 B.R. 645, 647 (Bankr.D.Mass.1984), the sixth circuit enumerated three factors to determine whether an extension of credit is a "loan" under § 523(a)(8). Those factors are (1) whether the student was aware of the credit extension and acknowledged that he/she owes money; (2) whether the amount owed is liquidated; and (3) whether the extended credit constituted a "sum of money due to person." *Merchant,* 958 F.2d at 741, *citing*

*Hill,* 44 B.R. at 647. *See In re Stone,* 180 B.R. at 501 (applying these three factors).

This court chooses to follow the approach of *Merchant, Hill* and *Stone,* and holds that a broader understanding of the term "loan" which focuses on the intent of the parties provides a preferred method for determining whether an extension of credit is a non-dischargeable "loan" under § 523(a)(8). This approach gives effect to the substance of the transaction and is supported by the early holding of *In re Shipman,* 33 B.R. 80 (Bankr.W.D.Mo.1983) where the court stated that the "central issue in determining dischargeability is whether the funds were for educational purposes, not whether the funds constituted a loan." *Id.* at 81, *quoted in Merchant,* 958 F.2d at 741 n. 2.

■ Applying the factors from *Hill,* this court concludes that Debtor's obligation to Plaintiff is a nondischargeable loan under § 523(a)(8). In this case, Debtor executed a promissory note, which clearly evidences Debtor's knowledge that Plaintiff extended credit on her behalf and that Debtor understood she owed a precise sum of money to the college. With this evidence appearing from the promissory note and the stipulation of facts, and in light of the parties' stipulation to all other elements of non-dischargeability under § 523(a)(8), this court finds and holds that the debt to Plaintiff is a non-dischargeable student loan.

**Policy and Legislative History**

■ The policy behind § 523(a)(8) also supports the conclusion of non-dischargeability in this case. The policy of § 523(a)(8) is to protect financial institutions and universities from students refusing to make good faith efforts to repay money that they borrowed to finance their educations. The legislative history shows Congress' recognition that:

"[E]ducational loans are different from most loans. They are made without business considerations, without security, without co-signors, and relying for repayment solely on the debtor's future increased income resulting from the education. In this sense, the loan is viewed as a mortgage on the debtor's future. In addition, there have been abuses of the system by those seeking freedom from educational debts without ever attempting to repay."

H.R.Rep. No. 595, 95th Cong., 2d Sess. 133 reprinted in 1978 U.S.Code Cong. & Ad. News 5963, 6094, *quoted in United States Dept. of Health & Human Serv. v. Smith,* 807 F.2d at 125.

■ Additionally, "[t]he legislative history of § 523(a)(8) indicates that Congress sought to quell the situation where an individual graduated from college owing one or more educational loans and then discharged them through a bankruptcy proceeding without making a good faith effort to repay those loans." *Id.* at 126, *quoting In re Avila,* 53 B.R. 933, 935 (Bankr.W.D.N.Y.1985). *See Report of the Commission on the Bankruptcy Laws of the United States,* H.R. Doc. No. 93–137, 93rd Cong., 1st Sess., Pt. 1, 176–77. Nondischargeability of student loans is, therefore an important tool to curb abuses of non-payment and to encourage the availability of funds to students who otherwise lack resources to secure loans.

An overly narrow definition of what constitutes a "loan" for dischargeability purposes under § 523(a)(8) conflicts with the statutory purposes of protecting financial institutions that extend credit to students and encouraging the availability of such loans. To allow a debtor to characterize his or her obligations under a written promissory note as something other than a student loan simply because the creditor and debtor did not exchange cash, undermines the clear congressional purposes of § 523(a)(8). *United States Dept. of Health and Human Serv. v. Smith,* 807 F.2d at 126 (allowing a doctor to go into bankruptcy and avoid liability on a student loan because payment was contingent on doctor's failure to serve in limited physician area subverts congressional purpose).

**Practical Considerations and Consistency with Interpretation of Other Terms within § 523(a)(8)**

The theory espoused by Debtor also fails to recognize the practical aspects of routine lending practices. The key to Debtor's line of cases is that a "loan" does not exist for § 523(a)(8) analysis without an actual ex-

change of funds or the "advancement of a sum of money" to the debtor. Yet, rarely does any borrower receive cash at the time of closing on a loan where the purpose of the loan is to satisfy the borrower's obligation to a third party. For example, at closing on a home loan or on a refinancing transaction, the lender routinely wires loan proceeds directly to third parties to pay the existing loan, the seller's profit, or other incidental expenses of the transaction. Although such amounts generally do not pass from the lender through the borrower's hands, no one would reasonably dispute the inclusion of those sums as part of the borrower's principal loan balance.

Furthermore, debtors who have raised the definition of a "loan" in defense of dischargeability challenges under § 523(a)(8), have inconsistently failed to object to the inclusion of attorney fees, interest or costs of collection as components of a "loan" even though such amounts are never directly advanced to the debtor. This inconsistency reflects the fallacy of requiring the delivery of funds to the borrower before the amounts may be characterized as a loan.

Lastly, this court's conclusion that the term "loan" under § 523(a)(8) should be interpreted broadly is further supported by the less restrictive interpretation afforded other terms in that code section. For example, in *TI Fed. Credit Union v. Delbonis*, 183 B.R. 1 (D.Mass.1995), the debtor urged that his educational loan funded by a federal credit union was dischargeable since the credit union operated on a profit basis and issued dividends to its members. As a profit institution, the debtor asserted that the credit union's loan did not qualify under § 523(a)(8). In *TI Fed. Credit Union*, however, the court held that the traditional purpose of credit unions was not profit based and therefore, its educational loan was not subject to discharge. *Accord In re Shipman*, 33 B.R. at 81. (look to purpose of transaction not whether funds constituted a loan).

Similarly, in *In re Pelkowski*, 990 F.2d 737 (3rd Cir.1993) the debtor sought to have her obligations as a co-maker on her children's educational loans determined to be dischargeable on the basis that the debtor was not a student and did not receive any educational benefit from the loans. Focusing again on the substance of the transaction and policy considerations, the court gave an expansive reading to the terms "educational loan" and held that the loans were nondischargeable even though the debtor herself did not receive any educational benefit from the loans. In light of the approach these cases employed to interpret other terms within § 523(a)(8), this court further determines that it would be inconsistent with the policy of § 523(a)(8) to construe the term "loan" as narrowly as Debtor urges.

Based upon the foregoing analysis:

**IT IS ORDERED** that judgment is entered in favor of Plaintiff and against Debtor on Plaintiff's adversary Complaint; and

**IT IS FURTHER ORDERED** that Debtor's obligations to Plaintiff under the promissory note dated August 28, 1989, in the principal amount of $4,915.96, plus attorney's fees in the amount of $737.40 and accrued interest in the amount of $1,524.00 as of June 6, 1997, the date of filing of Plaintiff's Complaint, plus interest and other obligations accruing under the promissory note thereafter, are non-dischargeable debts under section 523(a)(8).