**In re Fred ALIBATYA, Debtor.**

**Fred ALIBATYA, Plaintiff,**

**v.**

**NEW YORK UNIVERSITY, Defendant.**

**Bankruptcy No. 192–19442–353.**
**Adv. No. 193–1547–353.**

United States Bankruptcy Court,
E.D. New York.

Feb. 24, 1995.

### DECISION ON DISCHARGEABILITY OF STUDENT HOUSING DEBT

JEROME FELLER, Bankruptcy Judge.

This adversary proceeding was instituted by Fred Alibatya ("Plaintiff" or "Debtor"), a former graduate student of New York University ("NYU" or "Defendant"), to obtain a determination that certain outstanding pre-petition student resident housing charges are dischargeable in bankruptcy.

The Debtor filed a Chapter 7 petition on November 6, 1992. On April 28, 1993, the Debtor received his discharge and the bankruptcy case was thereafter closed. Subsequently, reporting that he had inadvertently omitted listing NYU as a creditor, the Debtor reopened his bankruptcy case, added NYU to his bankruptcy schedules, and commenced the instant adversary proceeding.

Before the Court are motions for summary judgment filed by the parties. The essential facts are undisputed. The parties disagree as to the application of 11 U.S.C. § 523(a)(8) to Plaintiff's debt. Defendant argues that Plaintiff's student housing debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(8). Plaintiff, on the other hand, contends that his unpaid housing charges to NYU are not encompassed by the 11 U.S.C. § 523(a)(8) exception to discharge and should therefore be discharged under 11 U.S.C. § 727, with his other debts. After review of the pleadings, motion papers, affidavits and exhibits annexed thereto, memoranda, oral arguments offered by the parties and upon our own legal research, we conclude that the Debtor's unpaid pre-petition room and board charges owing to NYU, totalling $2,550.50, are not excepted from discharge under 11 U.S.C. § 523(a)(8). Accordingly, Defendant's motion for summary judgment is denied and Plaintiff's cross-motion for summary judgment is granted.

#### I.

Defendant is a New York education corporation and a non-profit institution. Plaintiff was enrolled as a full-time graduate student at Defendant's Graduate School of Arts and Science between August 1986 and August 1989. During the period, Plaintiff resided at

Fred Alibatya, pro se.

New York University, Office of Gen. Counsel, New York City by Ada Meloy, Associate Gen. Counsel.

housing facilities of Defendant under yearly housing license agreements. For the 1988–1989 academic year, Plaintiff agreed, on June 2, 1988, to the terms of a "1988–1989 New York University Housing License" for the license period covering August 16, 1988 through August 15, 1989. Under the license, the fee for the assigned housing space was payable in three (3) equal installments, on or before August 1, December 1, and April 1 of each year. Plaintiff terminated the license agreement in May 1989, three months prior to its expiration. After Plaintiff vacated the apartment, Defendant presented Plaintiff with a "Rental Statement" dated July 22, 1989, representing unpaid housing charges in the amount of $2,550.50.

## II.

 The desire to give a debtor a "fresh start" is fundamental to our bankruptcy laws. Our bankruptcy laws are drafted with the general purpose of providing debtors with "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). To effectuate the Bankruptcy Code's "fresh start" policy, Chapter 7 of the code entitles a debtor to discharge of "all debts that arose before the date of the order for relief." 11 U.S.C. § 727(b). While the Bankruptcy Code generally seeks to provide a Chapter 7 debtor with a "fresh start" by discharging the debtor's debts, Congress has designated some debts as nondischargeable in bankruptcy. 11 U.S.C. § 523(a)(1)—(a)(12).[1] Congress created these exceptions to the general rule of dischargeability on the ground that the "creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start." *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). Courts are bound by these Congressional judgments that general bankruptcy policy

give way to more specific policy considerations.

The controversy between Plaintiff and NYU revolves about the reach of one of the statutory exceptions to discharge, i.e., 11 U.S.C. § 523(a)(8), a provision which makes nondischargeable certain educational debt. The sole issue is whether or not Plaintiff's responsibility to pay student room and board charges for use of Defendant's housing or dormitory facilities constitutes debt within the 11 U.S.C. § 523(a)(8) exception to discharge. The text of 11 U.S.C. § 523(a)(8), as amended in 1990,[2] reads in pertinent part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or, made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend. . . .

 Because the Bankruptcy Code favors dischargeability, it is well established that exceptions to discharge, which reflect a congressional determination that other public policies outweigh the debtor's need for a fresh start, should be narrowly construed against the creditor and in favor of the debtor. *See, e.g., In re Pelkowski,* 990 F.2d 737, 744 (3rd Cir.1993); *Boyle v. Abilene Lumber, Inc. (In re Boyle),* 819 F.2d 583, 588 (5th Cir.1987); *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir.1986); *Household Finance Corp. v. Danns (In re Danns),* 558 F.2d 114, 116 (2d Cir.1977); 3 *Collier on Bankruptcy* ¶ 523.05A, at 523–19 (15th ed. 1994) ("In determining whether a particular debt falls within one of the exceptions of

---

1. These exceptions to discharge run contrary to the two most important principles of the bankruptcy laws, i.e., a fresh start for the debtor, and equality of treatment for all debts and creditors. *See* H.R.Rep. No 595, 95th Cong., 1st Sess. 133–34 (1977).

2. Congress amended 11 U.S.C. § 523(a)(8) on November 29, 1990, with an effective date for cases commenced 180 days thereafter. Crime Control Act of 1990, Pub.L. No. 101–647, §§ 3621, 3631, 104 Stat. 4789, 4964–65, 4966.

section 523, the statute should be strictly construed against the creditor and liberally in favor of the debtor. Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system.")

Nonetheless, we are well aware that 11 U.S.C. § 523(a)(8) departs from this general policy of absolution or "fresh start" in order to enforce an overriding specific public policy favoring the enforcement of certain educational debt. Accordingly, this Court is not unmindful that "we can construe [11 U.S.C. § 523(a)(8) ] no more narrowly than the language and legislative history will allow." *In re Pelkowski*, 990 F.2d at 745.

### III.

The underlying basis for Defendant's nondischargeability position is somewhat enigmatic and therefore escapes precise analysis. At one point or another, either in papers filed or at oral argument, Defendant has sought to place Plaintiff's student housing obligation within virtually every category of excepted educational debt identified in 11 U.S.C. § 523(a)(8). Remarkably, at the same time, Defendant blurs distinctions between such excepted categories, blending them under one overarching rubric, namely, educational benefit. We will endeavor to parse the excepted categories of educational debt to determine their applicability to Plaintiff's student housing obligations.

■ Clearly, Plaintiff's failure to pay his student housing obligations cannot be deemed debt for "an educational benefit overpayment." Defendant paid nothing to Plaintiff. NYU merely allowed Plaintiff to live at school facilities in consideration for certain charges which were not paid. No linguistic gyration can twist a no payment or underpayment by Plaintiff to an overpayment by Defendant. Similarly, Plaintiff's student housing default cannot be considered a debt for "an obligation to repay funds received as an educational benefit, scholar-

ship or stipend." No funds were ever received by Plaintiff.

■ In the main, it would seem that Defendant relies on a contention that Plaintiff's housing debt is an "educational loan" within the meaning of 11 U.S.C. § 523(a)(8). The "educational" portion of the phrase is satisfied, according to Defendant, because i) NYU policy mandates full-time graduate student status as a prerequisite for the occupants of its housing facilities; and ii) students derive educational benefit by residing at NYU residence halls.[3] However, this is only a portion of the requirement for nondischargeability. The term "educational" is merely an adjective defining "loan". To satisfy the penultimate requirement of a "loan", although Defendant admits there was no loan to Plaintiff in the conventional sense, Defendant asserts that there was a "constructive" loan[4] arising out of a claimed extension of credit. Under the housing license agreement executed by the parties, Plaintiff was to pay housing fees in three installments within certain times of the year. If the Plaintiff failed to pay any sum due on a timely basis, Defendant had a right to terminate the lease under the license agreement. In this case, Defendant did not exercise its right to terminate the lease upon Plaintiff's failure to pay housing fees on a timely basis. Defendant argues that this non-exercise of a right to terminate a lease with a defaulting resident student is an extension of credit, which is equated by Defendant, without explanation, to a "constructive" loan.

■ Plaintiff's student housing obligations may well be educationally related. However, Defendant's position that such debt arises from an "educational loan" within the meaning of 11 U.S.C. § 523(a)(8) is unsupportable. The term "loan" is not defined in the Bankruptcy Code. Therefore, the Court must infer that Congress intended that term be construed in accordance with its established meaning. *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S.Ct. 2789, 2793, 69 L.Ed.2d 672 (1981). The classic definition of

---

**3.** The educational benefit revealed by Defendant are things like accessibility to the university, convenience of living and studying in close proximity, and collegiality.

**4.** Nowhere has Defendant sought to define the meaning, elements or legal definition of the so-called "constructive" loan.

a loan is given in *In re Grand Union*, 219 F. 353, 356 (2d Cir.1914), *cert. denied sub nom. Hamilton Investment Co. v. Irving L. Ernst*, 238 U.S. 626, 35 S.Ct. 664, 59 L.Ed. 1495 (1915), wherein the Second Circuit adopted the following language:

> [A] loan [is] a contract whereby, in substance one party transfers to the other a sum of money which that other agrees to repay absolutely, together with such additional sums as may be agreed upon for its use. If such be the intent of the parties, the transaction will be considered a loan without regard to its form.

The determination as to whether a particular transaction is a loan turns on the facts of the individual case. As one court observed:

> Whether or not a transaction constitutes a loan is essentially a factual question which is answered with reference to the context in which the transaction occurred. However, as a general matter, a critical issue in the determination of whether the transaction was a loan is whether the *intent* to make a loan was present. [Emphasis In Original]

*Midland Ins. Co. v. Friedgood*, 577 F.Supp. 1407, 1412–13 (S.D.N.Y.1984).

The facts here are simple, straightforward and undisputed and they fail to reflect a loan of any sort. Plaintiff leased dormitory facilities from Defendant under a housing license agreement. The intent of the parties was, without a doubt, to enter into a lessor/lessee relationship and not a lender/borrower relationship. There is not the slightest hint of a loan. Under the housing license agreement, the parties contracted at the outset that a default in payment by Plaintiff of housing charges would not result in discontinuance of the license absent a formal termination, exercisable by Defendant at its sole discretion. There was no contemplation by the parties, constructive or otherwise, to alter the lessor/lessee relationship should Defendant opt not to terminate the license upon default in payment. Defendant makes no showing or

even plausible explanation as to how its forbearance under the express provisions of the housing license agreement, and not exercising its right to terminate, transmutes a rental obligation to a loan. In fact, the conduct of Defendant is incompatible with its assertion of a loan. Defendant's submission of a "Rental Statement" to Plaintiff even after his default confirms the continuing lessor/lessee relationship and the concomitant obligation to pay rent and not to pay off a loan.[5] And, there is no indication that Plaintiff ever considered himself anything other than a lessee of housing facilities.

■ Apart from whether Plaintiff's rental arrears may be deemed a "loan", the debt to Defendant is not an "educational loan" within the meaning of 11 U.S.C. § 523(a)(8) for another reason. The educational loan encompassed by 11 U.S.C. § 523(a)(8) must be one under a "program funded" by, among others, a nonprofit institution. This means that to constitute an educational loan pursuant to 11 U.S.C. § 523(a)(8), there must be a sum of money or other resources set apart for a specific objective or activity. Defendant has not even suggested that Plaintiff's rental arrears arose under such a "program funded" by NYU.

## IV.

■ 11 U.S.C. § 523(a)(8) excepts from discharge certain categories of educational debt, unless the debtor could show undue hardship or that the debt first became due more than 7 years before the bankruptcy filing. Undue hardship is not the issue here and there is no question that the student housing charges in this case first became due less than 7 years before Plaintiff's bankruptcy filing. It is the basic position of Defendant that a student debtor filing a Chapter 7 case cannot discharge any valid fee or charge of an educational institution, unless the student debtor can prove undue hardship or that the fee or charge was first payable more than 7 years prior to the bankruptcy filing.[6]

---

**5.** See "Rental Statement" dated July 22, 1989 annexed to Defendant's cross-motion for summary judgment.

**6.** See Letter Memorandum of Defendant, dated August 15, 1994, and signed by Ada Meloy, Associate General Counsel.

This stance is anchored on the notion that a valid charge of an educational institution is always educationally related and confers, directly or indirectly, an educational benefit and is therefore *per se* nondischargeable under 11 U.S.C. § 523(a)(8). This position is supported, Defendant argues, by the 1990 amendments to 11 U.S.C. § 523(a)(8), which amendments expanded the educational debts deemed nondischargeable in bankruptcy.

Defendant's understanding of 11 U.S.C. § 523(a)(8) is fundamentally flawed and it is this error, we believe, which permeates and drives its unfocused assertions. At issue is not whether a portion of an educational loan, or other statutorily excepted category of educational debt, used to pay room and board is nondischargeable, but whether student room and board charges of an educational institution, standing alone, constitute nondischargeable debt. The congressional purpose in enacting § 523(a)(8) was to safeguard the financial integrity of the education loan programs, not student housing facilities. *See* Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–230, 93rd Cong., 1st Sess., Pt. 1, 176–77; S.Rep. No. 96–230, 96th Cong., 1st Sess. 3 (1979); 125 Cong.Rec. S9160 (daily ed. July 11, 1979) (statement of Sen. DeConcini).

 In 1990, 11 U.S.C. § 523(a)(8) was amended to include educational benefit overpayments and obligations to repay funds received as educational benefits, scholarships and stipends, in addition to educational loans, as debts excepted from discharge. The purpose of these amendments was not to elevate any garden variety indebtedness that a student may incur to an educational institution, be it cafeteria charges, book store charges, parking lot charges or room and board charges, to the category of excepted educational debt. Although it is true that the 1990 amendments expanded the categories of excepted educational debt, the amendments did not alter the essential purpose of 11 U.S.C. § 523(a)(8). The common denominator underlying the identified categories of excepted educational debt, both pre and post the 1990 amendments, is an outlay of tangible funds or sums of money derived from finite sources. It is the availability and solvency of varied student aid and assistance programs energized by circumscribed resources, including educational loans, that 11 U.S.C. § 523(a)(8), as amended, is designed to protect. Plainly, Plaintiff's housing debt, standing alone, fails to fall within the zone of protection afforded by 11 U.S.C. § 523(a)(8).

## V.

Based on all of the foregoing, Defendant has failed to sustain its burden of showing that Plaintiff's student housing debt is nondischargeable under 11 U.S.C. § 523(a)(8). The position espoused by Defendant that such debt is nondischargeable finds support neither in the language of 11 U.S.C. § 523(a)(8) nor its legislative history and, if countenanced, would impermissibly run counter the overall objective of the Bankruptcy Code to release an honest debtor from financial burdens and to facilitate the debtor's unencumbered "fresh start".

Accordingly, Defendant's motion for summary judgment is denied and Plaintiff's cross-motion for summary judgment is granted.

AN ORDER CONSISTENT WITH THIS DECISION SHALL BE ENTERED SIMULTANEOUSLY HEREWITH.