In re Sarah–Felicia PELZMAN,
Debtor.

George Washington University,
Plaintiff,

v.

Sarah–Felicia Pelzman, Defendant.

Bankruptcy No. 97–01765.
Adversary No. 98–0056.

United States Bankruptcy Court,
District of Columbia.

May 14, 1999.

Jeffrey Fenster, Bethesda, MD, for plaintiff.

Michael R. Murphy, Washington, DC, for defendant.

## DECISION

S. MARTIN TEEL, Jr., Bankruptcy Judge.

The plaintiff, George Washington University, has sued the debtor, Sarah–Felicia Pelzman, in this adversary proceeding for a determination that her obligation for four semesters of room and board while she was attending the University are nondischargeable under 11 U.S.C. § 523(a)(8). The first semester of room and board will be declared to be nondischargeable. The balance of the complaint will be dismissed with prejudice principally because the University has failed to show that the obligations after that first semester were made under any program funded by the University.

### I

The version of Section 523(a)(8) applicable to this case (the version in place as of the filing of the debtor's chapter 7 bankruptcy petition in 1997) provides in relevant part for nondischargeability of any debt:

> (8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend. . . .

11 U.S.C. § 523(a)(8). The University is a nonprofit institution. No governmental unit either made or guaranteed the loan. Because the court concludes later that extending room and board on credit was an educational loan, it is unnecessary to consider what "educational benefit overpayment or loan" encompasses other than an educational loan. If the statute is parsed to eliminate any parts that depend on a governmental unit or on an "educational benefit overpayment," to prevail under § 523(a)(8) the University had to establish that the room and board obligations were either:

[1] for an educational ... loan ... made under any program funded in whole or in part by [the University], or [2] for an obligation to repay funds received as an educational benefit, scholarship, or stipend....

## II

The court readily finds that the second criterion of nondischargeability (that the debt was "for an obligation to repay funds received as an educational benefit, scholarship, or stipend") is not present for any of the room and board debt because the obligation was not one "to repay funds received." The University concedes that Ms. Pelzman received no funds from the University with respect to the incurring of the room and board obligations. Instead, she was allowed to have room and board without pre-payment. The language of the statute is plain that funds must be received in order to fit into this criterion of nondischargeability. Accordingly, the University cannot prevail on the basis of this second criterion.

## III

Except for the first semester of room and board the debtor received, neither can the University prevail under the first criterion of nondischargeability (that the debt was for "an educational ... loan ... made under any program funded in whole or in part by [the University]"). This is because the University has failed to show that the extension of credit (a form of loan) for room and board after the first semester was made under a "program" funded by the University.

### A.

The statute plainly is not satisfied by a simple showing of an educational loan. Instead, the statute additionally requires a showing that the loan "was made under a program funded ... by [the University]." *Santa Fe Medical Services, Inc. v. Segal (In re Segal),* 57 F.3d 342, 347–48 (3d Cir.1995); *Cazenovia College v. Renshaw*

*(In re Renshaw),* 229 B.R. 552, 559–60 (2d Cir. BAP 1999).

### B.

The University concedes that the extension of credit for room and board for the last of the four semesters was not made under a program but was an unprecedented exception made, despite the arrears in the prior semesters' room and board, pursuant to a decision of the University's treasurer, apparently based on Ms. Pelzman's father's position as president of the University's faculty senate.

### C.

But, except for the room and board for the first semester that the debtor attended the University, the University's proof fell short with respect to the other semesters as well. The University called only one witness, Kathleen Haynes, its director of student accounts. Ms. Haynes had no personal knowledge of whether the University had a program for funding loans for room and board to students. She could only testify that the room and board "lease" that the debtor signed was typical of what other students signed and that the University's bulletin makes reference to room and board arrangements being available to students. Students are required to pay one half of a semester's total tuition and room and board bill up front. After making a payment of at least half of the tuition and room and board bill, a student then has eight weeks to pay the balance, after which the account begins to accrue late charges. Ms. Pelzman's tuition was paid in full via a tuition credit, an employment benefit of her father as a University professor; this exceeded one half of the combined tuition and room and board bill. The University's policy was that no student would be allowed to register for the next semester if the room and board obligation for the prior semester had not been paid.

This evidence failed to establish an extension of credit, under a program funded

by the University, for room and board after a student's first semester of attendance. No evidence was presented to demonstrate that after the first semester the University has a program in place to allow the student to receive later semesters' room and board on credit without making any payment toward such room and board or entering into a payment plan to address paying the unpaid bill. The University let Ms. Pelzman continue receiving room and board on credit not for just one semester but for four semesters without her making anything but one very small payment toward such room and board. The court was left to speculate whether Ms. Pelzman was allowed to continue receiving room and board based on some set University policy or, instead, was allowed to continue receiving room and board on credit because she was the daughter of the president of the University's faculty senate. Particularly in light of a policy of not allowing a student to re-register for a new semester when in default on any prior semester's room and board, it appears that Ms. Pelzman was allowed room and board on credit in derogation of the University's room and board program, not pursuant to that program.

■ The statute required the University to show the extension of credit was made under a program funded by the University. The term "program" connotes more than just the fiat of the University's administrators allowing a student to continue to incur room and board on credit on an ad hoc basis, devoid of any demonstrated existing criteria or policies. *See Santa Fe Medical,* 57 F.3d at 348; *Johnson v. Virginia Commonwealth University (In re Johnson),* 222 B.R. 783, 787 (Bankr. E.D.Va.1998).

The University urges that the debtor's receipt of room and board loans was pursuant to a program that gave her a tuition credit as an employment benefit for her father. That was not a program for making loans, but instead an employment benefit of the debtor's father pursuant to which tuition was *paid* as a form of compensation for the father, not *lent.* The proof simply did not demonstrate that allowing the debtor room and board on credit for months and months, after she had defaulted on paying her first semester's room and board (and subsequent semesters' room and board as well), was an established part of the tuition credit employee benefit program.

The history of § 523(a)(8)'s amendments over the years to its present form, *see Renshaw,* 229 B.R. at 559–60, suggests that the addition of the requirement of a "program funded" by a nonprofit institution was intended principally to expand nondischargeability of education-related loans: pursuant to that amendment, as had not been the case previously, if the program pursuant to which the loan was made was funded in part by a nonprofit institution, and regardless of whether the nonprofit institution itself made the loan, an educational loan would now be nondischargeable.

But the term "program" is unambiguously now an additional requirement of nondischargeability. The statute previously allowed a debt to be nondischargeable if the educational loan was made by a nonprofit institution. The statute now requires more than that. Whatever the term "program" may mean, it is not satisfied by the University's showing that the loan was made as part of the University's operations: that establishes nothing more than that the University made the loan.

For the room and board incurred after Ms. Pelzman's first semester at the University, the evidence of record simply did not suffice to carry the University's burden of proof that the loan for this obligation was made pursuant to a program.

## IV

The debt for room and board for the first semester that the debtor attended the University is nondischargeable under § 523(a)(8) as a debt "for an educational

... loan ... made under any program funded in whole or in part by [the University]" within the meaning of the statute. This amounts to a $3,410.00 nondischargeable debt.

### A.

The University has established nondischargeability because (1) the extension of credit for room and board was made pursuant to a program, (2) the program was funded by the University, (3) the extension of credit constituted a loan, and (4) the loan was an educational loan.

### 1.

 The extension of credit for room and board was made pursuant to an established program. Although no formal proof of a program reduced to writing was received in evidence, the evidence established that the University's established policy was to allow students to obtain room and board on credit for the first semester they attend the University as long as they had paid at least one-half of their combined bill for tuition and room and board. This sufficed to constitute a program.[1]

Although the court first thought that room and board charges for only the first eight weeks of the first semester would be nondischargeable, this is not the case. Because the debtor did not withdraw from the University within the first four weeks of classes, she was entitled to no refund of her room charges. Lease ¶ 3. So she was on the hook for the entire semester's room charge even if the University had enforced its remedies for a default in payment at the eight-week mark.

The meal charges present a closer question. The debtor was entitled to a refund of the food service charges on a pro rata basis, but only if she withdrew. The University was entitled to terminate the lease for failure to complete payment at the eight-week mark. If the University had done so, the court assumes, without deciding, that the debtor would not have been liable for meals she was not entitled to receive after termination. That the University failed to terminate the contract—to terminate the debtor's meal privileges—does not negate the debtor's having entered into an arrangement, pursuant to a program funded by the University, for the extension of credit in receiving meals made for the entire semester at the outset. Rather, the University's failure only amounted to a lapse in taking aggressive steps to avoid harm to it arising from the payment breach.

The University showed the existence of a program pursuant to which the debtor was allowed to enter into a lease extending an arrangement for receipt of meals on credit. The evidence did not establish or even suggest that upon a payment default at the eight-week mark, the University's program results in its immediately terminating the contract and ousting a student from receiving meals for the remaining two months of the semester. Instead, the evidence suggested that the program would not result in immediate termination: the University could look to the restrictions on re-registration for future semesters and its right to repayment with late charges as normally sufficient inducements to encourage students to cure their delinquencies. The debtor was free to adduce contrary evidence showing that the program included terms that dictated terminating the contract instead of allowing the debtor to receive meals on credit. But she did not do so.

The court concludes that the debt for the entire first semester's meals, as well as for rooming, were made pursuant to a program.

---

1. Ms. Pelzman's room and board was furnished on credit pursuant to this program: because Ms. Pelzman's tuition was paid (via a tuition credit as an employment benefit for her father), she pre-paid at least one-half of her combined bill and thus was entitled to receive room and board on credit, with the balance of the first semester's room and board due after eight weeks.

2.

The program was funded by the University: no other entity was involved in the program for extending credit in this fashion.

3.

■ This extension of credit was a loan. Both parties intended to create an obligation requiring the debtor to repay the extended credit, as is evidenced by the promise of payment contained in the lease executed at the start of the school year. The transaction thus sufficed to constitute a loan: it was not necessary for money to change hands. *Andrews University v. Merchant (In re Merchant)*, 958 F.2d 738, 741 (6th Cir.1992); *DePasquale v. Boston University School of Dentistry (In re DePasquale)*, 225 B.R. 830, 832–33 (1st Cir. BAP 1998), and cases cited therein. The agreement allowing the debtor to have room and board at the University was cast as a lease. But that does not alter the fact that the lease embodied an extension of credit requiring repayment which qualified as a loan. To the extent that *Alibatya v. New York University (In re Alibatya)*, 178 B.R. 335 (Bankr.E.D.N.Y.1995), is to the contrary, this court respectfully disagrees with its analysis.

4.

■ The loan was an educational loan. The lease between the debtor and the University allowed the University to terminate the lease if the debtor ceased to be a registered student of the University.[2] The loan facilitated the debtor's education by allowing her to reside on campus and take her meals there. Even had the University lent the debtor money to use to pay for rent and meals other than on campus, the loan would be an educational loan if intended to allow the debtor to meet those expenses incidental to her obtaining an education. The loan was plainly designed to facilitate the debtor's education and

ought to be treated as an educational loan. *See Stevens Institute of Technology v. Joyner (In re Joyner)*, 171 B.R. 762 (Bankr. E.D.Pa.1994); *see also Alibatya* 178 B.R. at 338 ("[p]laintiff's student housing obligations may well be educationally related"); *but see Peller v. Syracuse University (In re Peller)*, 184 B.R. 663 (Bankr. D.N.J.1994).

B.

The total amount for room and board for the first semester which is nondischargeable is $3,410.00 (as stated in the residence hall lease agreement). While the principal focus of this decision has been on room and board, there are other charges, such as fees and an emergency loan, which the plaintiff has listed in its pre-trial statement. However, there was no showing that these were made pursuant to a program, nor that they were incurred during the first semester.

Accordingly, a judgment will be entered in accordance with this decision which supplants the court's earlier oral decision.

---

**2.** If the University had exercised its right to terminate the lease for non-payment, there would be an argument that the room debt was not an educational loan for the period after eviction because the debtor received no educational benefit.