In re Ann DePASQUALE, Debtor.

Ann DePASQUALE, Plaintiff,

v.

BOSTON UNIVERSITY SCHOOL OF DENTISTRY, Defendant.

Bankruptcy No. 97–40920–JFQ. Adversary No. 97–4066.

United States Bankruptcy Court, D.   Massachusetts.

Aug. 14, 1997.

**440**

Robert F. Casey, Jr., Harvard, MA, for debtor.

Richard S. Daniels, Jr., Daniels Law Offices, P.C., Boston, MA, for defendant.

Stephen M. Rodolakis, Peters, Massad & Rodolakis, Worcester, MA, trustee.

### OPINION

JAMES F. QUEENAN,Bankruptcy Judge.

Section 523(a)(8) of the Bankruptcy Code makes an individual's debt nondischargeable if, with certain exceptions, the debt is "for an educational ... loan ... made under any program funded in whole or in part by a ... nonprofit institution...." [1] The question

---

1. The statute provides in full as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

. . . . .

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless-

(A) such loan, benefit, scholarship, or stipend over-payment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8) (1994).

here is whether this provision includes a debt incurred when a university permits a student to pursue her degree without first prepaying her tuition. Recognizing a division in the case law, I hold the statute is not that broad.

Ann DePasquale, a chapter 7 debtor (the "Debtor"), has brought this action requesting a judgment declaring dischargeable her tuition debt of about $28,000 owed to Boston University School of Dentistry (the "University"). Presently before me are the parties' cross-motions for summary judgment. The affidavits filed with the motions, and the pleadings, disclose the following undisputed facts.

In February of 1985, while attending the University, the Debtor sustained a fractured skull as a result of snow sledding. Because her recovery was slow, she could not attend the University on a full-time basis and fell behind on her clinical requirements. The University declined to certify to the Debtor's various student loan providers (HEAL, GSL, NDSL and ALAS) that she was still a student. As a result, these lenders defaulted the Debtor on her existing loans, which then totaled $155,000. (She does not seek to discharge these debts.) She tried to resolve the situation with the University over a two and one-half year period. She finally succeeded in having the University certify her as a student, but because of the prior defaults on her student loans, the lenders declined to make further cash advances to her.

In the Fall of 1988, with no further cash advances available, the University permitted the Debtor to continue pursuing her dentistry degree without first prepaying its periodic tuition charges. It sent her current bills for all such charges. The parties had an understanding that the Debtor would pay her tuition later, but they made no agreement, written or oral, on a repayment schedule. The Debtor completed her clinical requirements in the Spring of 1992. On April 26, 1992, as a condition to receiving her degree, she signed a "Payment Agreement." In it, the Debtor promised to pay the University

$22,607.05, beginning with monthly installments of $50 through September of 1992, at which time her account was to be "reviewed to accelerate [her] monthly payments." The Payment Agreement says nothing about interest.[2]

■ The Debtor contends that the University's grant of credit to her was not a "loan" within the meaning of section 523(a)(8). I agree.

■ A loan involves more than an extension of credit. It is the furnishing of money or other property by a lender to a borrower. Black defines "loan" as follows:

> A lending. Delivery by one party to and receipt by another party of sum of money upon agreement, express or implied, to repay with or without interest.... Anything furnished for temporary use to a person at his request, on condition that it shall be returned, or its equivalent in kind, with or without compensation for its use .... [citations omitted]

Black's Law Dictionary 844 (5th ed.1979).

A similar definition has been employed under section 523(a)(8). In *U.S. Dep't of Health and Human Services v. Smith*, 807 F.2d 122 (8th Cir.1986), the debtor, who was a doctor, had failed to satisfy her practice requirements under a governmental grant which by its terms was to be paid back only if the debtor failed to practice primary care medicine in a defined "physician shortage area." In holding that the grant was a "loan" because of this condition, the court stated:

> In order to have a loan, there must be an agreement, either express or implied, whereby one person advances money to the other and the other agrees to repay it upon such terms as to time and rate of interest, or without interest, as the parties may agree... *Id.* at 124. [quoting *Nat'l Bank of Paulding v. Fidelity & Casualty Co.*, 131 F.Supp. 121, 123–24 (S.D.Ohio 1954)]

■ Two further considerations support applying this meaning to section 523(a)(8). First, the statute itself makes it clear that an advance of funds must be involved for a loan to be present. According to the statute, to

---

2. The affidavits do not disclose what payments, if any, the Debtor made under the agreement. The subsequent increase in the amount of the debt to the present agreed figure of approximately $28,-

000 is apparently in part the result of the accrual of interest agreed upon by the parties after agreement was signed.

be excepted from discharge, a loan from a nonprofit institution must be under a program "funded" in whole or in part by the institution. 11 U.S.C. § 523(a)(8) (1994). This means cash. Second, the statute is to be interpreted under a policy which favors a narrow construction of an exception to discharge. *E.g., Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Boroff v. Tully (In re Tully),* 818 F.2d 106, 110 (1st Cir.1987); *Driggs v. Black (In re Black),* 787 F.2d 503, 505 (10th Cir.1986); *Barclays Am./Business Credit v. Long (In re Long),* 774 F.2d 875, 879 (8th Cir.1985).

The University says a distinction between a cash loan and the credit granted here is highly technical. Because both are extensions of credit, it urges the court to go beyond the statute's literal meaning. But my function is to apply the words Congress has chosen. Those words are unambiguous, so it is unnecessary to resort to legislative history. In any event, that history contains nothing bearing on the present question.

Moreover, the statute itself suggests a reason why Congress may have wished to restrict its coverage to cash advances. Section 523(a)(8) requires the loan to be made under a "program". This term connotes a purely voluntary and settled practice on the part of the institution, perhaps accompanied by written guidelines spelling out eligibility requirements. That is unlikely to be the case when a school waives for an enrolled student its normal requirement of tuition prepayment. If the student has suffered an unfortunate change of circumstances, the waiver may be the result of a certain degree of compulsion. Such extensions of credit are as likely to be haphazard as made under a program.

■ Witness what happened here. The University's tuition waiver appears to have been a begrudging one, the product of some compulsion after the Debtor became ineligible for further cash advances. The University asserts what it did was part of a "program." In its affidavit, it states that "[i]n special circumstances, [the University] allows students with financial hardship to register and continue pursuing their education without first paying their tuition in full." This "practice", it says, "was adopted to benefit

individual students who are caught in situations whereby traditional funding is either delayed or cannot be readily obtained." The University points to no writing setting out a policy for such credit extensions. Although, conceivably, such a "practice", even without a written policy, might be sufficiently settled to constitute a "program" under the statute, its contours are certainly hard to pin down.[3] Congress may well have decided to confine this discharge exception to cash advances made under a funded program in order to avoid having courts deal with the more amorphous nature of prepayment waivers.

There is, nevertheless, a division of opinion on this question. Some courts construe the statute as I have. *See, e.g., Seton Hall University v. Van Ess (In re Van Ess),* 186 B.R. 375 (Bankr.D.N.J.1994); *Peller v. Syracuse University (In re Peller),* 184 B.R. 663 (Bankr.D.N.J.1994); *In re Ellenburg,* 89 B.R. 258 (Bankr.N.D.Ga.1988). Others equate an extension of credit with a loan. *See, e.g., Andrews University v. Merchant (In re Merchant),* 958 F.2d 738, 740–41 (6th Cir.1992); *Plumbers Joint Apprenticeship & Journeyman Training Committee v. Rosen (In re Rosen),* 179 B.R. 935, 939–40 (Bankr.D.Or. 1995); *Najafi v. Cabrini College (In re Najafi),* 154 B.R. 185, 188–91 (Bankr.E.D.Pa. 1993); *University of New Hampshire v. Hill (In re Hill),* 44 B.R. 645 (Bankr.D.Mass. 1984).

The decisions holding that an extension of credit is a loan are unpersuasive. Some recognize that the definition of "loan" requires a transfer of funds, and then inexplicably rule an extension of credit fits within the definition. *See, e.g., Merchant,* 958 F.2d at 740–41; *Hill,* 44 B.R. at 647. Others involve facts which the deciding court might distinguish from the present case. In *Merchant,* for example, the debtor had signed forms evidencing the amount of her indebtedness before she registered for classes, much like one signs a promissory note before receiving an advance of funds. None of these deci-

---

**3.** The University's statements in its affidavit are sufficient for it to escape entry of summary judg-

ment against it by reason of the absence of a "program".

sions focuses on the statute's reference to a "funded" program.

A separate order has issued declaring the debt dischargeable.