### In re Ann DePASQUALE, Debtor.

### Ann DePASQUALE, Plaintiff/Appellee,

### v.

### BOSTON UNIVERSITY SCHOOL OF DENTISTRY, Defendant/Appellant.

### BAP No. MW 97–071.

United States Bankruptcy Appellate Panel of the First Circuit.

Oct. 15, 1998.

Richard S. Daniels, Jr. and Grace M. Calamita of Daniels Law Offices, P.C., Boston, MA, for the appellant.

Robert F. Casey, Jr., Boston, MA, for the appellee.

Before GOODMAN, HAINES, and CARLO, United States Bankruptcy Judges.

PER CURIAM.

Boston University School of Dentistry ("BU") appeals from the bankruptcy court's entry of summary judgment determining that Ann DePasquale's obligations to it are dischargeable in her Chapter 7 case. In its published opinion, the court below determined that DePasquale's obligation to BU was not an educational loan within the meaning of Bankruptcy Code § 523(a)(8) and, therefore, not insulated from discharge by its provisions. *See DePasquale v. Boston Univ. School of Dentistry (In re DePasquale)*, 211 B.R. 439 (Bankr.D.Mass.1997).

*Jurisdiction*

The bankruptcy court's entry of judgment for DePasquale is a final judgment, providing us with jurisdiction pursuant to 28 U.S.C. § 158(a) and (b).

*Standard of Review*

The issue on appeal is whether the bankruptcy court's entry of summary judgment was error. Thus, BU's appeal raises legal

issues only; our review is *de novo. City of Hope Nat'l Medical Center v. Healthplus, Inc.,* 156 F.3d 223, 225–26 (1st Cir.1998); *Federal Deposit Ins. Corp. v. Kane,* 148 F.3d 36, 38 (1st Cir.1998).

*Factual Background*

A review of the summary judgment record discloses that, insofar as relevant to the lower court's ruling, there existed no dispute of material fact.

In February 1985, while enrolled as a BU student, DePasquale suffered a personal injury and could not attend classes full-time. When BU did not certify to her loan providers that she was a full-time student, they declared DePasquale's default on approximately $155,000.00 in student loans and refused to advance her the additional funds she needed to complete her education.

In the fall of 1988, after more than two years of negotiations, BU permitted DePasquale to attend classes without prepaying her tuition. Although BU billed DePasquale for tuition, it was agreed that she would pay the tuition later. They did not set a payment schedule.

DePasquale completed her degree requirements and graduated in the spring of 1992. As a condition to receiving her degree, the university insisted that DePasquale sign a "Payment Agreement," promising to pay BU $22,607.05. That agreement, dated April 26, 1992, provided for initial monthly payments of $50.00, to be increased after September of 1992. The record contains no evidence regarding DePasquale's payment history or the agreement's interest rate.[1]

*Procedural Background*

DePasquale filed a voluntary petition under Chapter 7 of the Bankruptcy Code on February 12, 1997. She filed an adversary complaint against BU on February 26, 1997, seeking a determination that her debt to it was dischargeable. BU counterclaimed, asking the court to determine that the obligation was excepted from discharge under § 523(a)(8). On cross-motions for summary judgment, the bankruptcy court ruled in DePasquale's favor. This appeal ensued.

*The Decision Below*

The bankruptcy court agreed with DePasquale that the arrangement by which she attended BU, promising to pay tuition at a later date, did not constitute a "loan," and, so, as a matter of law, was without § 523(a)(8)'s anti-discharge protections.[2] Invoking a dictionary definition and case law, the court determined that a "loan involves more than an extension of credit. It is the furnishing of money or other property by a lender to a borrower." *In re DePasquale,* 211 B.R. at 441 (citing *Black's Law Dictionary* 844 (5th ed.1979)); *see also U.S. Dep't of Health and Human Servs. v. Smith,* 807 F.2d 122, 124 (8th Cir.1986) (holding that conditional educational grant was a "loan" within § 523(a)(8) because a "loan" requires an agreement " 'whereby one person advances money to the other and the other agrees to repay it,' " quoting *National Bank of Paulding v. Fidelity & Casualty Co.,* 131 F.Supp. 121, 123–24 (S.D.Ohio 1954)). In the bankruptcy court's view, the deal struck between DePasquale and BU was a "credit extension," as opposed to a "loan." Because the statute requires that the loan be made under a program "funded" in whole or in part by the institution, the court reasoned that to come within § 523(a)(8), money must actually be paid over to the debtor: "This

---

1. DePasquale's complaint, however, indicates that Boston University is owed the approximate sum of $28,000.00, which suggests that interest accrued on the debt.

2. The statute provides as follows:
    (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
    (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—
    (A) such loan, benefit, scholarship, or stipend over-payment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or
    (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]
    11 U.S.C. § 523(a)(8).

means cash." *In re DePasquale,* 211 B.R. at 442.

The court opined that to extend § 523(a)(8)'s protections so far as to include the relationship between DePasquale and BU would stretch the statute beyond its literal, unambiguous terms, a step inconsistent with the long-recognized policy "which favors a narrow construction of an exception to discharge." *Id.* (citing cases).[3]

*Discussion*

We disagree with the bankruptcy court's conclusion for several reasons. To begin, its spare construction of the term "loan," requiring that it requires an exchange of funds, ignores a substantial portion of the very definition it invoked. Under that definition, a "loan" may be "[a]nything furnished for temporary use to a person at his request, on condition that it shall be returned, or its equivalent in kind, with our without compensation for its use." *Id.* at 441 (quoting fifth edition of *Black's law Dictionary* 844). It does not require an actual exchange of money. Moreover, a later edition of *Black's Law Dictionary* defines "loan" to include "the creation of debt by a credit to an account with the lender upon which the debtor is entitled to draw immediately." *Black's Law Dictionary* 936 (6th ed.1990). And another dictionary defines "loan" to include an "advance, credit, accommodation [or] allowance." *See West's Legal Thesaurus/Dictionary* 464 (1986). *See also Roosevelt Univ. v. Oldham, (In re Oldham),* 220 B.R. 607, 612 (Bankr. N.D.Ill.1998) ("[I]t defies common sense and the frequent use of the term to merely confine 'loan' to cash or money transactions. If one can 'loan' a tangible piece of property to someone, such as a tool, car or the like, one can 'loan' intangible things such as credit for unpaid tuition."); *University of New Hampshire v. Hill (In re Hill),* 44 B.R. 645, 647 (Bankr.D.Mass.1984) ("The American College Dictionary (1970 Ed.) defines credit as 'a sum of money due to a person'—in essence, a loan.").

We agree with the majority of courts that have considered the question. A formulaic approach to the definition of "loan" for purposes of § 523(a)(8) should not hold sway against an approach that focuses on the substance of the transaction that created the obligation in question. In a case with facts very similar to our own, the Bankruptcy Appellate Panel for the Eighth Circuit concluded that, by extending credit to a student for tuition and books, a college had extended a "loan" within the meaning of 11 U.S.C. § 523(a)(8), even though no money changed hands. *See Johnson v. Missouri Baptist College (In re Johnson),* 218 B.R. 449, 455 (8th Cir. BAP 1998), *aff'g,* 215 B.R. 750 (Bankr.E.D.Mo.1997); *see also Andrews Univ. v. Merchant (In re Merchant),* 958 F.2d 738, 741 (6th Cir.1992) (extension of credit may be a loan within meaning of § 523(a)(8) if: "1) the student was aware of the credit extension and acknowledges the money owed; 2) the amount owed was liquidated; and 3) the extended credit was defined as a 'sum of money due to a person.' "); *Smith,* 807 F.2d 122 (a grant awarded on the condition that a debtor practice medicine in a "physician shortage area" constitutes an educational loan); *Missouri Baptist College v. Johnson (In re Johnson),* 215 B.R. 750, 752 (Bankr.E.D.Mo.1997) (requiring that a sum of money be advanced to a borrower "is too narrow [of an approach] and improperly focuses on the form of the transaction ... rather than by focusing properly on the substance of the transaction. The correct analysis ... asks whether the creditor extended credit to the Debtor (for educational purposes) and whether the Debtor promised to repay the amount of credit advanced. Whether a creditor actually disbursed cash to the debtor is irrelevant to the substance of the transaction"); *Najafi v. Cabrini College (In re Najafi),* 154 B.R. 185 (Bankr.E.D.Pa. 1993) (student who attended university without prepaying tuition received a nondischargeable loan); *United States Dep't of Health and Human Servs. v. Avila (In re Avila),* 53 B.R. 933 (Bankr.W.D.N.Y.1985)

---

3. The bankruptcy court's conclusion is not without modest support in the case law. *See, e.g., Seton Hall University v. Van Ess (In re Van Ess),* 186 B.R. 375 (Bankr.D.N.J.1994); *Peller v. Syra-* *cuse University (In re Peller)* 184 B.R. 663 (Bankr.D.N.J.1994); *In re Ellenburg,* 89 B.R. 258 (Bankr.N.D.Ga.1988).

(loan may exist regardless of the form of the transaction); *In re Hill,* 44 B.R. 645 (university's grant of short-term credit to student awaiting receipt of student loan was a non-dischargeable loan).[4]

■ If DePasquale had borrowed money from BU to pay her tuition there would be no question that the University had made an educational loan to DePasquale. Likewise, if BU had merely made one or two bookkeeping entries (*e.g.,* posting a paper balance, on credit, to debtor's account and debiting debtor's account to pay tuition) the transaction would likely qualify as a "loan," even if "cash" did not change hands. The arrangement before us, although distinguishable in detail, differs little, if at all, in substance.

■ We conclude that the proper focus under 11 U.S.C. § 523(a)(8) must be on the substance of the transaction. If a qualified institution or agency provides funds, credit, or financial accommodations to a debtor for educational purposes under a contemporaneous, mutual understanding of future repayment, the arrangement may be a loan within the statute's meaning, whether or not funds, as such, were advanced.[5]

We need go no further. The bankruptcy court did not examine the facts beyond the extent necessary to reach its conclusion that the obligation before it did not, as a matter of law, qualify as a "loan" for purposes of the discharge exception. It did not consider whether all facts necessary to create a binding repayment obligation existed and it did not evaluate evidence to determine whether BU's accommodation to DePasquale was made as part of a "program." § 523(a)(8)(A).

Neither did it examine the question whether excepting the debt from discharge would impose an "undue hardship" on DePasquale or her dependents. § 523(a)(8)(B). We leave those issues for the court on remand.

The bankruptcy court's judgment granting DePasquale summary judgment is REVERSED, and the matter is hereby REMANDED to the United States Bankruptcy Court for the District of Massachusetts for further proceedings consistent with this opinion.

SO ORDERED.

4. The approach exhibited by the cited cases is consistent with such legislative intent as is discernible. In discussing the history of the student loan exception to discharge, the Eighth Circuit BAP concluded that the amendments to 11 U.S.C. § 523(a)(8), since its enactment, "clearly reflected a congressional design to further limit the dischargeability of educational obligations." *In re Johnson,* 218 B.R. at 453. Another court has explained that "the purpose of the educational loan nondischargeability provision is to preserve the solvency of student loan programs so that funds will be available for future students." *Plumbers Joint Apprenticeship & Journeyman Training Comm. v. Rosen (In re Rosen),* 179 B.R. 935, 938 (Bankr.D.Or.1995).

5. Some courts have gone further, taking the approach that an extension of tuition is either a "loan" or an "educational benefit" and therefore nondischargeable. For example, in *Stone v. Vanderbilt Univ. (In re Stone),* 180 B.R. 499, 502 (Bankr.M.D.Tenn.1995), a Chapter 7 debtor brought an adversary proceeding contending that a university's post-discharge collection action against the debtor violated the discharge injunction. The court found it unnecessary to determine whether the tuition extension was a loan or an educational benefit. It concluded that the note was *either* one or the other and, therefore, within § 523(a)(8)'s ambit. *See id.* at 502.