**In re Rajesh MEHTA, Debtor.**

**Boston University, Plaintiff/Appellant,**

v.

**Rajesh Mehta, Defendant/Appellee.**

**CIV. No. 00–5448(WHW).**

United States District Court,
D. New Jersey.

May 10, 2001.

Louis Rubino, White and Williams LLP, Westmont, NJ, Attorneys for Appellant Boston University.

Theodore Kozlowski, Morristown, NJ, Attorney for Appellee Rajesh Mehta.

## OPINION

WALLS, District Judge

Creditor/appellant Boston University appeals from the grant of partial summary judgment to the debtor/appellee Rajesh Mehta by the United States Bankruptcy Court, Hon. Novalyn Winfield, clarified by an Amended Order of Clarification. This appeal is decided without oral argument. The Bankruptcy Court's grant of partial summary judgment is affirmed.

## *BACKGROUND*

Debtor Rajesh Mehta ("debtor") filed a voluntary Chapter 7 bankruptcy petition with the United States Bankruptcy Court, District of New Jersey, on April 29, 1997. The debtor listed Boston University ("BU") as a general unsecured creditor on Schedule F of his bankruptcy petition in the amount of $15,434.00. On March 30, 1999, the debtor filed an adversary complaint to determine the dischargeability of debt owed by the debtor to the defendant under 11 U.S.C. § 523(a). BU opposed the dischargeability of the debt owed under 11 U.S.C. § 523(a)(8).

Mehta attended BU in Fall 1993 after he pre-registered for courses in the Spring of 1993. Although he failed to complete registration, failed to make payments on the tuition balance due and was denied financial assistance, he did attend the entire Fall 1993 semester and received grades and credits for three out of the four courses for which he was registered.[1] The

---

1. After he completed that semester, he de-  manded a copy of his transcript from BU. In

university did not transfer any funds to the debtor; nor did he make any promise to repay any funds. The debtor did not sign any agreement or promissory note with regard to the tuition balance and at no time was asked to agree orally to repay the tuition. Nor did BU refuse to allow the debtor to attend class until he received financial aid or request that he sign any promissory note to evidence a loan as to the tuition balance. The debtor incurred charges for tuition and other expenses for a total of $9,331.00, which increased to $12,953.73 with interest and late fees.

In the adversary proceeding, Mehta moved for summary judgment, and BU cross-moved for summary judgment. The parties agreed that $2000.00 of the debt was an educational loan, and as to that the bankruptcy court granted partial summary judgment to BU, holding that the portion of the debt which was an educational loan was non-dischargeable. BU argued that the remaining tuition account balance was also a non-dischargeable educational loan under Section 523(a)(8). The bankruptcy court determined that the portion of the tuition account balance not attributable to a student loan or promissory note was not dischargeable under 523(a)(8) and granted partial summary judgment to the debtor on this portion of the claim. BU appeals.

### JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a), because the Amended Order for Summary Judgment disposed of all issues raised by the adversary complaint and is a "final order."

### STANDARD OF REVIEW

■ On review of a bankruptcy court's decision on conclusions of law, including a grant of summary judgment, a district court exercises plenary review. *Sharon Steel Corp. v. National Fuel Gas Distribution Corp.*, 872 F.2d 36, 38–39 (3d Cir.1989); *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988); *In re Parker*, 250 B.R. 512, 515 (M.D.Pa.2000), citing *Rosen v. Bezner*, 996 F.2d 1527, 1530 (3d Cir.1993); *RD & J Communications, Inc. v. Maggio*, No. Civ. A. 96–2155, 1996 WL 904754, *1 (D.N.J. Nov.20, 1996). A district court reviews a bankruptcy court's findings of fact under a clearly erroneous standard. Bankruptcy Rule 8013; *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir.1999); *In re Krystal Cadillac Oldsmobile GMC Truck, Inc.*, 142 F.3d 631, 635 (3d Cir.1998); *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988); *RD & J Communications v. Maggio*, 1996 WL 904754, at *1. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *RD & J Communications v. Maggio*, 1996 WL 904754, at *1.

### DISCUSSION

### I. Summary Judgment Standard

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.

---

accordance with its written policy, the University refused to provide the debtor with a

copy of his transcript until his tuition, fees and other charges had been paid in full.

R.Civ.P. 56(c)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists only if the evidence presented would enable a reasonable jury to return a verdict for the non-movant. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. *See id.* at 249, 106 S.Ct. 2505.

To defeat summary judgment, an issue of fact in dispute must be one which a reasonable factfinder could base a verdict for the non-moving party and one which is essential to establishing the claims. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The non-moving party may not defeat summary judgment by simply resting on the argument that the record contains fact sufficient to support his claims. *See Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1362 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993); *O'Donnell v. U.S.,* 891 F.2d 1079, 1082 (3d Cir.1989). Rather, the non-moving party must go beyond the pleadings and, by affidavits or other evidence, designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; Fed.R.Civ.P. 56(e).

Appellant BU argues that the following two findings of fact should be reversed as clearly erroneous:

1. The portion of BU's claim not covered by an actual loan document or promissory note guaranteed by the federal government is not a "loan" as that term is used in § 523(a); and

2. The portion of BU's claim not covered by an actual loan document or promissory note guaranteed by the federal government is not an "educational benefit overpayment" as that term is used in § 523(a).

## II. Analysis

Under 11 U.S.C. § 523(a), an individual will not be discharged from any debt

> for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend....

11 U.S.C. § 523(a)(8). This provision has been amended a number of times. In 1990, Congress substituted the phrase "for an educational benefit overpayment or loan made" for "for an educational loan made." *See* Federal Debt Collection Procedures Act of 1990, Pub.L. No. 101–647, § 3621(a), 104 Stat. 4933, 4964–65 (1990).[2]

> Congress enacted Section 523(a)(8) because there was evidence of an increasing abuse of the bankruptcy process that threatened the viability of educational loan programs and harm to future students as well as taxpayers. Congress recognized that this is an instance where a creditor's interest in receiving full payment of the debt outweighs the debtor's interest in a fresh start.

---

**2.** The section was also amended in 1998, but that amendment is not relevant to this matter, because the 1990 amendments apply only to cases filed after October 7, 1998. *See* Higher Education Amendments of 1998, Pub.L. 105–244 § 971(b), 112 Stat. 1581, 1837 (1998).

*In re Renshaw,* 222 F.3d 82, 87 (2d Cir. 2000), *citing Report of the Commission on the Bankruptcy Laws of the United States,* H.R. Doc. No. 93–137, pt. I at 11, 170, 176–177; pt. II Sec. 4–506(8) & note (1973), *reprinted in Collier on Bankruptcy,* app. pt. 4(c) at 4–253, 4–422, 4–431–4–432; 4–7–6, 4–710–4–711 (Lawrence P. King ed., 15th ed. rev.1996); and collecting cases.

▬ Courts generally construe the statutory exceptions to discharge in bankruptcy "narrowly against the creditor and in favor of the debtor." *In re Pelkowski,* 990 F.2d 737, 744 (3d Cir.1993); *In re: Decker,* 595 F.2d 185, 187 (3d Cir.1979); *In re: Alibatya,* 178 B.R. 335, 337 (Bankr. E.D.N.Y.1995). This reflects the purpose of the Bankruptcy Code to " 'relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh.' " *In re Renshaw,* 222 F.3d at 86, quoting *Williams v. U.S. Fidelity & Guar. Co.,* 236 U.S. 549, 554–555, 35 S.Ct. 289, 59 L.Ed. 713 (1915).

> Because bankruptcy is both a right of the debtor, and a remedy for the creditor, ... a proper balancing of those competing interests requires the creditor to prove by a preponderance of the evidence that its claim is one that is not dischargeable.

*In re Renshaw,* 222 F.3d at 86, citing *Grogan v. Garner,* 498 U.S. 279, 287, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). However, because Section 523(a)(8) departs from the general policy to allow a "fresh start" to enforce an "overriding public policy" which favors enforcement of certain educational debt, a court " 'can construe [this provision] no more narrowly than the language and legislative history will allow.' " *In re Alibatya,* 178 B.R. at 338, quoting *In re Pelkowski,* 990 F.2d at 745.

The Bankruptcy Court determined that the debtor's unpaid tuition did not fall within the non-dischargeability provision of Section 523(a)(8). The court stated that "the language is very explicit with possibly a somewhat garbled punctuation of the language that has to do with education[al] benefit overpayments. But the language is pretty clear and I don't think it was intended to reach anything other than the federally funded loan programs." June 5, 2000 Transcript of Oral Arguments ("Tr."), at 6:14–6:18. The Court announced its disagreement with the First and Eighth Circuit Bankruptcy Appeals Board decisions which it believed took "too broad an interpretation" of the statute. *Id.* at 6:20–7:6. The court further explained:

> [H]ave a look at *In re Renshaw* ... I would argue their better view is they follow in part the statutory section by its very language and come to the conclusion that *even if you can reach a conclusion it was some kind of educational loan by the plain statutory language it has to be part of a funded program* and that plainly [exce]pts this kind of a debt and I'll go back to one of my points that I made in *Van Ess* is that if you wanted to be treated as a non-dischargeable loan then you could have prevented the attendance at school in the absence of a loan or some other kind of grant to pay for the tuition. I see no difference between this and any other party that provides goods and services to the debtor and doesn't get paid. In the grander scheme of things, ... any unsecured creditor could be said to have made a loan to every debtor by the theory advanced by Boston University and it simply doesn't do that *by any acceptable understanding and common sense understanding of "loan" that I know of,* there has got to have been some intent to have created a loan situation. Typically, it's reflected in paperwork so I would

think, arguably, you could have an oral agreement but neither in this case nor in [*Van Ess* ] do I have any indication that there was any sort of loan arrangement made.

Tr. at 12:15–13:15.

Appellant BU interprets the bankruptcy court's discussion at oral argument to indicate factual findings that the unpaid tuition was neither a "loan" nor an "educational benefit overpayment" within the meaning of the statute. The first finding might be implicit in the bankruptcy court's decision: Because there was no oral or written agreement or other evidence of the parties' intent to treat the debt as a loan, the tuition could not be considered a loan. However, more explicit was the finding that even if the unpaid tuition did constitute a "loan" or "educational benefit overpayment," it nevertheless did not fall within Section 523(a)(8) because it failed to satisfy the requirement that the loan or overpayment be (1) "made, insured or guaranteed by a governmental unit" or (2) "made under any program funded in whole or in part by a governmental unit or a nonprofit institution." 11 U.S.C. § 523(a)(8). Although it is not clear to this Court whether the bankruptcy court actually found the debt did not constitute an "educational benefit overpayment," the court determined that notwithstanding the "garbled punctuation" of that phrase, such must be interpreted in conjunction with the remainder of the section which requires the educational benefit overpayment to be made under a program funded by the government or a non-profit institution.

On appeal, BU first urges this Court to adopt an interpretation of the ambiguous phrase "educational benefit overpayment" as a series of the nouns "benefit," "overpayment," and "loan," all modified by the adjective "educational."

Accordingly, BU argues that the debtor received an "educational benefit" by his attendance of classes without payment of his tuition. Under BU's proposed construction of the term "educational benefit overpayment," the tuition represents a debt for an "educational benefit" received by the debtor. This interpretation was adopted by a bankruptcy court in the Eastern District of Pennsylvania in *Najafi v. Cabrini College,* 154 B.R. 185, 190 (Bankr.E.D.Pa.1993). The *Najafi* court explained:

> We believe that the absence of commas in the phrase "educational benefit overpayment or loan made" makes this phrase difficult to interpret. . . . We believe that, when reading the Code section more broadly than the Debtor suggests, the terms "benefit," "overpayment," and "loan" should be construed as a series of nouns, all modified by the adjective "educational." There is little logical reason for linking "benefit" with "overpayment," as does the Debtor in his proposed reading of this section. Clearly, the Debtor was the recipient of an "educational benefit" from Cabrini. . . .
>
> If anything could logically be termed as an "educational benefit overpayment," it would be an instance where a student received an educational benefit which was in excess of that for which the student paid. The debtor's receipt of educational benefit for which he failed to make any payment would appear to meet this definition.

154 B.R. at 190. Nevertheless, BU acknowledges that not all courts have accepted this interpretation of that phrase. BU also argues that here the bankruptcy court erroneously relied upon its own previous decision of *Seton Hall University v. Van Ess (In re Van Ess),* 186 B.R. 375 (Bankr. D.N.J.1994), which held that the nonpay-

ment of tuition did not result in an extension of credit that constituted a non-dischargeable educational loan. In *Van Ess,* Judge Winfield rejected *Najafi's* construction of the phrase "educational benefit overpayment":

> The reading of the clause proposed by the *Najafi* court is strained, and contrary to not only its plain language, but also the legislative history which manifests a congressional intent to except from discharge educational loans and related benefits that are made, insured or guaranteed by a governmental unit or nonprofit institution. The clause as written does not require additional punctuation to make its meaning clear. As written, the clause encompasses both an educational benefit overpayment or loan. Further, by focusing solely on the terms "educational benefit" the *Najafi* court did not consider the *requisites of the remainder of the clause that require that the educational benefit overpayment or loan be either (j) made, insured or guaranteed by a governmental unit, or (ii) made under a program sponsored by a governmental unit or nonprofit institution.*

186 B.R. at 379 (emphasis added).

This Court rejects BU's position for several reasons. First, it is not clear that the Bankruptcy Court below held that the debtor's nonpayment of tuition was not an "educational benefit overpayment." Although the bankruptcy court acknowledged that the punctuation of that phrase is "somewhat garbled," the court emphasized that the nondischargeability provision focuses on funded programs. Tr. at 6:11–6:22. However, the Court made no further explicit findings as to whether the tuition was an "educational benefit overpayment." Nevertheless, Judge Winfield stated that she remained persuaded by *Van Ess,* which did reject such an inter-

pretation of the phrase. Assuming the bankruptcy court meant to imply that it rejected a finding that the debt was either an "educational benefit" or "educational benefit overpayment," this Court finds that such determination was not clearly erroneous. The Second Circuit court has recently rejected BU's grammatical construction under ordinary statutory construction principles:

> When a word can have various grammatical functions, Congress is free to use any or all of them. In accordance with common English usage, when Congress wishes to indicate that a series of items is a set of alternatives, it consistently separates the items by commas and uses an "or" before the last one. That is precisely what it does elsewhere in § 523(a)(8) itself: "made, insured or guaranteed"; "educational benefit, scholarship or stipend." *If Congress had meant "educational benefit, overpayment or loan," the statute would not read "educational benefit overpayment or loan."* . . .
>
> Moreover, the term "educational benefit overpayment" was added as a unit in 1990. . . . The sensible reading of the phrase is therefore that it includes loans or overpayments of educational benefits.

*In re Renshaw,* 222 F.3d at 92 (emphasis added), citing *Peller,* 184 B.R. at 669; *Van Ess,* 186 B.R. at 380. The bankruptcy court below in *Renshaw* explained that an "educational benefit overpayment" is "an overpayment from a program such as the GI Bill where . . . if the students receive payments after they have left the school, that is an educational benefit overpayment." 229 B.R. at 556 n. 8. *See also In re Coole,* 202 B.R. 518, 519 (Bankr.D.N.M. 1996) (same). This Court agrees that *Renshaw's* definition makes better grammatical sense than *Najafi's.* Similarly, *Najafi's* assertion that even if one construed

the phrase as a whole, non-payment of tuition can be termed an overpayment has been rejected by courts which hold that there can be no "educational benefit overpayment" unless there was an actual payment made by the school under a funded program to the student. *See Renshaw,* 222 F.3d at 92; *Alibatya,* 178 B.R. at 338 ("No linguistic gyration can twist a no payment or underpayment by [the student] into an overpayment by [the school]."); *Van Ess,* 186 B.R. at 379. This Court agrees with that reasoning. Accordingly, assuming the bankruptcy court held that no "educational benefit overpayment" was made within the meaning of the statute, that finding must be affirmed.

█ BU next argues that the bankruptcy court erroneously relied on *Van Ess*'s rejection of the idea that nonpayment of tuition could constitute an "extension of credit" and hence a "loan." In *Van Ess,* there was no indication the debtor had participated in any student loan program, and the debtor had entered no written agreement to repay the tuition. There the school argued both that the unpaid tuition should be considered an extension of credit. 186 B.R. at 377. *Van Ess* determined that a student's simple nonpayment of tuition did not constitute an extension of credit under a funded program and consequently was not a loan. *Id.* at 380. BU distinguishes *Van Ess* on the ground that the debtor here applied for financial aid, which allegedly would have covered the tuition payment. Consequently, BU urges that the unpaid tuition here should nevertheless have been determined to be an extension of credit—and thus a nondischargeable loan—even though it was not in *Van Ess.*

A number of courts that have addressed the issue of whether unpaid tuition and other expenses owed to a university are included in the non-dischargeability provision of Section 523(a)(8) have commented that Congress did not define the term "loan" as it is used in 523(a)(8) and accordingly have proceeded to interpret the term according to its settled meaning under the common law. *See In re: Renshaw,* 222 F.3d at 88, citing *NLRB v. Amax Coal Co.,* 453 U.S. 322, 329, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981); *In re: Peller,* 184 B.R. 663, 667 (Bankr.D.N.J.1994); *In re Merchant,* 958 F.2d 738, 740 (6th Cir. 1992); *United States Dep't of Health and Human Services v. Smith,* 807 F.2d 122, 124 (8th Cir.1986); *In re Ellenburg,* 89 B.R. 258, 262 (Bankr.N.D.Ga.1988). In *Renshaw,* the Second Circuit applied the "classic definition of a loan":

> To constitute a loan there must be (i) a contract, whereby (ii) one party transfers a defined quantity of money, goods, or services, to another, and (iii) the other party agrees to pay for the sum or items transferred at a later date. This definition implies that the contract to transfer items in return for payment later must be reached prior to or contemporaneous with the transfer. When such is the intent of the parties, the transaction will be considered a loan regardless of its form. . . . Absent such an agreement, failure to pay a bill when due does not create a loan.

222 F.3d at 88, citing *In re Grand Union Co.,* 219 F. 353, 356 (2d Cir.1914).

BU relies on two Bankruptcy Appellate Panel decisions, from the First and Eighth Circuits, to support its position that the bankruptcy court should have applied a broad definition of "loan" and concluded that the nonpayment of tuition constituted an extension of credit. In *DePasquale v. Boston University School of Dentistry,* 225 B.R. 830 (1st Cir. BAP 1998), a Boston University student attended classes without prepaying her tuition. The student later filed a voluntary Chapter 7 petition.

Although the facts of that case are somewhat vague, it is clear that the student agreed to pay the school for her tuition, although no payment schedule was set. 225 B.R. at 831. As a condition to receive her degree, the university insisted that she sign a "Payment Agreement" in which she promised to pay BU the unpaid tuition. *Id.* In her bankruptcy proceeding, the student sought a determination that the tuition debt was dischargeable. The bankruptcy court granted summary judgment in favor of the student, and BU appealed. The bankruptcy court determined that the deal between the parties was a "credit extension" as opposed to a loan. Because the statute requires the loan to be made under a "funded" program, the court reasoned that money must be paid over to the student. *Id.* at 831–832. On review, the Appellate Panel rejected the student's contention that her promise to pay the tuition at a later date did not constitute a loan. *Id.* at 831. The Panel also relied upon several, broad dictionary definitions of the term "loan" including:

- "anything furnished for temporary use to a person at his request, on condition that it shall be returned, or its equivalent in kind, with [or] without compensation for its use";
- "the creation of debt by a credit to an account with the lender upon which the debtor is entitled to draw immediately"; and
- "a sum of money due a person."

225 B.R. at 832 *quoting Black's Law Dictionary,* at 441; *Black's Law Dictionary* 936 (6th ed.1990); and *In re Hill,* 44 B.R. 645, 647 (Bankr.D.Mass.1984) (quoting the *American College Dictionary* (1970 ed.)). Accordingly, the Panel determined that a loan may be created notwithstanding that no money had changed hands. Rather, the existence of a loan would be determined based upon the "substance of the transaction that created the obligation in question." *Id.* The Panel further held:

> If a qualified institution or agency provides *funds, credit, or financial accommodations* to a debtor for educational purposes *under a contemporaneous, mutual understanding of future repayment,* the arrangement may be a loan within the statute's meaning, whether or not funds, as such, were advanced.

*Id.* at 833 (emphasis added).

In *Johnson v. Missouri Baptist College,* 218 B.R. 449 (8th Cir. BAP 1998), a college extended credit to a student for tuition, books and other expenses, for which the student executed a promissory note. The student filed a Chapter 13 bankruptcy petition, and the bankruptcy court determined the debt to the college was a "loan" under § 523(a)(8) and was non-dischargeable. *Id.* at 450. On appeal, the parties stipulated that the college was a non-profit institution and that the credit was extended for educational purposes under a "program." *Id.* at 450–451. The Appellate Panel reviewed the long history and policies behind the section, which was primarily to ensure the continuance of educational loan programs and reflect a congressional policy to limit the dischargeability of educational obligations. *Id.* at 451, 453. The Panel reviewed several dictionary definitions of the term "loan," including "something lent for the borrower's temporary use on condition that it or its equivalent be returned." *Id.* at 456, quoting Webster's Third International Dictionary 1326 (Philip Babcock Gove ed.1993). The Panel concluded that the term does not require the exchange of funds between lender and borrower. *Id.* at 457. By allowing the student to attend classes, the Panel observed, the college in effect advanced funds or credits to the student's account, which the student drew upon by class attendance. *Id.* That Panel also emphasized that the

student had signed a promissory note to evidence her debt, implying at the very least that the intent of the parties to create an obligation to repay was essential to the definition. *Id.*

*Johnson* also cited a number of cases which it stated applied a "broad" interpretation of the word loan "which emphasizes the substance of the transaction and the underlying intent of the parties." 218 B.R. at 455. To illustrate, in *United States Dep't of Health and Human Services v. Smith,* 807 F.2d 122 (8th Cir.1986), the Eighth Circuit held that funds received under the Physician Shortage Area Scholarship Program satisfied the definition of a loan. A medical student received a scholarship under this program with the obligation to repay the loan if he did not practice in certain designated physician shortage areas after graduation. *Id.* The Eighth Circuit held that the contingent nature of the loan did not prevent the scholarship from being a loan. *Id.* at 125. The *Johnson* Panel also discussed *Andrews Univ. v. Merchant (In re Merchant),* 958 F.2d 738 (6th Cir.1992), in which the Sixth Circuit ruled that a university's extensions of credit constituted a loan for 523(a)(8) purposes. 218 B.R. at 456. In *Merchant,* the debtor had executed a promissory note which evidenced her indebtedness and agreed to repay the sums. 958 F.2d at 741. *Merchant* also noted, "If such be the intent of the parties, the transaction will be considered a loan without regard to its form." *Id.* at 740. *Johnson* cited both *Najafi* and *University of New Hampshire v. Hill (In re Hill),* 44 B.R. 645 (Bankr.D.Mass.1984) as cases which allowed even "short-term, unmemorialized extensions of credit" to constitute loans for 523(a)(8) purposes. 218 B.R. at 456. In *Hill,* a Massachusetts bankruptcy court found that a university's provision of short-term credit to student awaiting receipt of loan constituted a loan. 44 B.R. at

646–647. There the school agreed to hold the student's registration open for thirty days, and when he still had not received his student loan, the school agreed to proved the student short-term credit, pending receipt of his loan proceeds. *Id.* at 646. He received $2,500 of credit, the cost of tuition for one semester. *Id.* He later was suspended for poor grades, and attempted to enroll at another college. *Id.* The University attempted to collect on the debt, and the student filed a bankruptcy petition. *Id.* The bankruptcy court, applying the definition of "credit" as "a sum of money due," concluded that was the same as a loan. *Id.* at 647. The court explained:

> The debtor acknowledged as he had to, that on registration he owed the University of New Hampshire $2,500 for tuition.... He was well aware of the terms of the loan. He was being extended credit, namely, the cost of tuition, without interest, to be paid as soon as he received the proceeds of his student loan.

*Id.*

According to BU, because the debtor here applied for financial aid, which allegedly would have covered the entire tuition balance, his attendance at classes without payment should constitute an extension of credit and hence a loan, under the rationale of *DePasquale* and *Johnson.* As said, the bankruptcy court rejected the rationale of these cases, holding that such was too broad a definition of the term "loan" and, more importantly, ignored the requirement of the statute that the loan be (1) "made, insured or guaranteed by a governmental unit" or (2) "made under any program funded in whole or in part by a governmental unit or a nonprofit institution."

BU offers nothing to explain why this conclusion was in error apart from its disagreement with the outcome. The Court does not need to determine whether a "narrow" definition of "loan," such as that applied by *Renshaw* and *Grand Union,* or a broader definition, as used in *DePasquale* and *Johnson,* must apply. Even under the broader principles applied in the latter cases, any finding that the debtor's tuition balance was not a loan must be upheld. Each of those focused on the intent of the parties and the substance of the transaction, despite their reference to very broad definitions of the term "loan." In each of the latter cases, the parties' intent to create an obligation to repay was clear: In *DePasquale,* the student had signed a "Payment Agreement." 225 B.R. at 831. In *Johnson,* the student executed a promissory note. 218 B.R. at 449. Even in *Hill,* the student orally agreed to repay the "extension of credit." 44 B.R. at 647. Notwithstanding the *Johnson* court's characterization of *Hill's* facts to be an "unmemorialized" agreement, the parties there expressed a contemporaneous intent to create an obligation to repay. Although *Najafi* held a student's unpaid tuition incurred without any contemporaneous agreement was nondischargeable, it did so only on the ground that such constituted an "educational benefit overpayment."[3] 154 B.R. at 190. And to repeat, this Court has already rejected that construction. *Najafi* did agree, however, that the circumstances there did not demonstrate an intent to create an obligation to repay, because there was *"no evidence of a 'meeting of the minds' as to how and even whether the Debtor would pay tuition"* for the semester in question. *Id.* at 190–191 (emphasis added). BU argues that the *debtor* here intended to be responsible for

his tuition because he initially filed a loan application. However, an examination of the "intent of the parties" and the "substance of the transaction" reveals no contemporaneous agreement between the parties to treat the unpaid tuition as a loan. The debtor did not complete registration or obtain an agreement by BU to hold his registration open until he paid. BU points to no oral or written agreement between the parties contemporaneous with the debtor's attendance of classes; nor did the debtor sign any promissory note to evidence the parties' intent to consider the tuition balance a "loan."

To the contrary, BU admits that it has an official policy under which it does not prohibit students from attendance without prepayment of tuition, because it understands that errors sometimes are made in the processing of financial aid paperwork which delay the student's receipt of financial aid. BU argues that the rationale of *Van Ess* would require a school to forbid the student to attend classes or else suffer the consequences of the student incurring a dischargeable debt. The Court understands BU's wish to avoid what it considers a draconian result. However, as the bankruptcy court correctly noted, BU has the alternative to require such students to agree to execute a promissory note under an official program.

BU also contends that it has relied on "precedents" applicable in Massachusetts because it is located in Massachusetts and protests that application of different principles here would encourage students to forum-shop. However, apart from *DePasquale* and *Hill,* which as discussed are distinguishable, it refers to no other First Circuit or other case applicable to Massa-

---

**3.** *Najafi* held that only a pro rata portion of the tuition attributable to the few weeks the student attended classes would be nondischargeable. *Id.* at 191.

chusetts.[4]  Nor has the Court located any relevant case law from within that jurisdiction which construes Section 523(a)(8) in this context.  Moreover, as this Court has concluded, application of the principles found in *DePasquale* and other cases proffered by BU do not compel a result contrary to the bankruptcy court's holding below.

Finally, BU appears to contend that the "extension of credit" by BU was similar enough to a "loan" that to hold the debt dischargeable would violate the legislative intent behind Section 523(a)(8).  However, the legislative intent was not to preclude all student debts from discharge.  Rather, as stated, the purpose was to protect the viability of loan programs established by the government and by nonprofit institutions from abuse by students who incurred debts from loan programs and then filed for bankruptcy.  Here, there is no evidence that the debtor participated in any program funded by the government or the school.  The debtor's "abuse," if any, of the bankruptcy process does not pose any threat to the continued funding of educational loan programs by the government or BU; nor does it appear that his attendance of classes without payment of tuition lessen the availability of BU's "funds" to other students.  Accordingly, this result does not violate the legislative intent behind Section 523(a)(8).

▮  Indeed, notwithstanding the confusion as to whether the bankruptcy court in fact held that the tuition balance was neither a loan nor an educational benefit overpayment, the bankruptcy court's conclusion must be upheld based on its determination that even if there were a loan or educational benefit overpayment, such did not occur under a program funded by the government or BU. The court was somewhat correct that the First and Eighth Circuit BAPs ignored the additional requirement that the loan be part of a "funded" program. This Court's own review of *DePasquale* reveals that the court there did not discuss this requirement.  Nor did the *Hill* court.  The *Johnson* parties, however, had stipulated that the credit was extended for educational purposes under a "program."  218 B.R. at 450–451.  Here BU cites no facts in the record or stipulation that would support a conclusion that the student's debt was incurred under a program, let alone a "funded" program. Consequently, the bankruptcy court's determination that BU had failed to satisfy the requirements of Section 523(a)(8) to establish that the debtor's unpaid tuition balance was nondischargeable is upheld.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's grant of partial summary

---

**4.** There is reference in the record to BU's having forwarded an unreported decision from within the First Circuit to the Bankruptcy Court below.  However, no such case is cited in BU's briefs—either below or on appeal—and no such case was forwarded to this Court.  Accordingly, this Court's decision does not reflect the consideration of any such unreported case.

In addition, BU references New Jersey personal jurisdiction doctrine in a belated reply. BU contends that because certain New Jersey courts have held that out-of-state university's recruiting activities in New Jersey were not "systematic and continuous" to support the exercise of personal jurisdiction, this Court should follow *DePasquale* and other First Circuit precedent instead of relevant cases from within the Third Circuit.  This Court disagrees: Personal jurisdiction doctrine is irrelevant to which precedent is binding and/or persuasive and thus the cases cited by BU require no further discussion.

To the extent BU argues that minimum contacts are not present sufficient to support the exercise of personal jurisdiction over it by the Bankruptcy Court below, this Court declines to address the issue because BU did not raise it below.

judgment to Rajesh Mehta, which held the balance of the tuition owed to BU dischargeable, is AFFIRMED.

**SO ORDERED.**

### *ORDER*

Creditor/appellant Boston University appeals from the grant of partial summary judgment to the debtor/ appellee Rajesh Mehta by the United States Bankruptcy Court, Hon. Novalyn Winfield, clarified by an Amended Order of Clarification. Upon review of the parties' submissions and the record on appeal, and for the reasons stated in the accompanying opinion,

It is on this *** day of May, 2001:

ORDERED that the bankruptcy court's grant of partial summary judgment which held the debtor's tuition balance dischargeable is AFFIRMED.